Lovick P. THOMAS, Plaintiff-Appellant,

v.

E. I. DuPONT de NEMOURS & CO., INC., Defendant-Appellee.

No. 76–3348.

United States Court of Appeals, Fifth Circuit.

June 15, 1978.

John P. Nelson, Jr., New Orleans, La., for plaintiff-appellant.

Alfred G. Albert, Acting Sol. of Labor, Carin Ann Clauss, Associate, Lois G. Williams, Heidi D. Miller, Jacob I. Karro, Attys., Dept. of Labor, Washington, D. C., for amicus curiae Secretary of Labor.

Michael J. Molony, Jr., W. Richard House, Jr., New Orleans, La., for defendant-appellee.

Before BROWN, Chief Judge, AINSWORTH and VANCE, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Lovick Thomas appeals from a judgment dismissing, for lack of subject matter jurisdiction, his age discrimination suit against DuPont and an order denying his motion to alter or amend the judgment. We reverse.

### The Redoubtable Thomas

We glean from the complaint, and Thomas' affidavit [1] accompanying his memorandum in opposition to DuPont's motion to dismiss, this story. Thomas, age 56, has been employed by DuPont for almost 30 years. He began with DuPont as a field sales representative of industrial and agricultural chemicals in Texas. From 1957 through 1960, he worked as an administra-

---

1. Since our decision rests on the failure of the District Court to allow amendment of the complaint, consideration of the facts in Thomas' affidavit is legitimate in view of Conley v. Gibson, 1957, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80:

[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

tive specialist at DuPont's headquarters in Wilmington, Delaware. When Thomas expressed a desire to return to field sales, DuPont granted his request. He began working as a field sales representative in the New Orleans area in September 1962.

During his tenure in the New Orleans territory, Thomas compiled an excellent sales record. When, in January 1972, DuPont revised its organization structure by merging three departments, several personnel changes were effected, and Thomas was assigned to the southern Louisiana territory. In the fall of 1972, DuPont offered Thomas a transfer to Houston. Since he was a senior salesman in the area and had developed the large bulk of the business there, he expressed a preference for staying in New Orleans and DuPont allowed him to do so. In late 1972 and early 1973, Thomas secured for DuPont a sizeable "target account" that had eluded his predecessors. In May 1973, he climaxed contract negotiations with a second sizeable "target account." With these successes, Thomas was selling each DuPont product which that company was "facilitated" to sell to every known customer in his sales territory.

Despite his outstanding sales performance, DuPont criticized Thomas' work. Although he requested specifics, no adequate reasons were forthcoming. Finally, on January 15, 1974, Thomas was demoted from a field sales position, transferred involuntarily from New Orleans to Wilmington, and replaced by a younger man.

Thomas' initial response was to analyze the asserted reason for his demotion—declining sales performance. Believing that a mistake had been made in evaluating his record, he attempted to obtain reevaluation with the hope of being reassigned to a sales position "if an opening should develop." He wrote to the Houston district manager on October 21, 1974, requesting a reappraisal of his record and asking to be considered for assignment to a specific sales territory

handled by a DuPont employee then approaching retirement.

Through the next year, he continued to pursue various avenues for consideration within the company. In a November 6, 1974 letter to his immediate supervisor, he asked not merely for reinstatement to his former position, but clearly indicated that he would be satisfied with another sales assignment in the south, with a plant (non-sales) assignment nearer New Orleans,[2] or with some other field assignment. He continued to request a revised performance report and a transfer, making these requests at various times to at least four company officials, both at the national and regional levels. After the November 6 letter, there were ten more specific contacts, which are documented in the record.[3] These consisted of meetings with, or letters from Thomas to, his immediate superior in Wilmington, the Houston district manager, DuPont's Sales Manager, and DuPont's Director of Sales. At least three of these officials told him that he could not return to field sales because he was too old.

### The Cat Out Of The Bag

It was not until October or November 1974, some nine months after his original demotion, that Thomas had any reason to suspect that his age might have been a motivating factor. At that time, his immediate supervisor told him that his sales record was "really not in question," but that DuPont needed to "make room for younger men." Also in November, the company sales manager told him that DuPont faced a problem in its sales force because the majority of its salesmen were old and there would be no one with experience to replace them upon retirement. Yet a third DuPont official confirmed this in April 1975 by advising Thomas that the company had to "weed out older employees" and that he (Thomas) was not qualified for a field sales job "due to age."

---

**2.** His strong preference for location in the south resulted from a desire to be near his children who lived in New Orleans with Thomas' ex-wife.

**3.** Two contacts on November 17, 1974; December 19, 1974; February 17, 1975; April 1, 1975; April 9, 1975; April 14, 1975; June 3, 1974; June 23, 1975; and July 2, 1975.

At about the same time, April 1975, Thomas began seeking help outside the company. He contacted a Wage and Hour office of the Department of Labor in April and was told that any complaint he wished to file "must be filed within 180 days of [his] termination." In subsequent telephone calls to Wage and Hour in May or early June, he was informed that the violation was a "continuing" one.[4] Thomas filed a complaint with the Labor Department on August 15, 1975, alleging age discrimination. The Department investigated and attempted conciliation. A Wage and Hour compliance officer asked DuPont to reinstate Thomas as a salesman, preferably in New Orleans. DuPont refused. That same officer reiterated that the 180-day notice requirement would not begin to run until he was discharged because the violation was continuing as long as he remained in "demoted status."

On October 25, 1975, Thomas filed a notice of intent to sue with the appropriate state agency. On November 12, 1975, he filed a formal notice of intent to sue with the Secretary of Labor. On November 13, the Wage and Hour Division notified him that it had found no reasonable cause to believe that he had been discriminated against because of age.

### The Chemistry Below

Thomas brought suit on April 14, 1976, pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C.A. §§ 621 et seq. DuPont filed its answer, along with a motion to dismiss and for summary judgment. This motion attacked Thomas' failure to file with the Department of Labor a written notice of intent to sue within 180 days of the alleged ADEA violation as required by 29 U.S.C.A. § 626(d)(1).[5]

A hearing was held on DuPont's motion on June 2. During that hearing counsel for Thomas pointed out to the Court one event which was not specifically alleged in the complaint: On October 22, 1975 (just prior to November 12, 1975 when Thomas notified the Secretary of his intent to sue), an opening in Houston became available for which Thomas unsuccessfully applied. Counsel asked the Court in the event it deemed the violation not to be a continuing one, for permission (i) to amend the complaint to include a specific allegation concerning DuPont's refusal to transfer Thomas to Houston; or (ii) to initiate limited discovery for the purpose of determining what openings occurred during the time that Thomas had expressed a continued interest in returning to field sales.

On June 10, 1976, the District Court entered an order dismissing the complaint, reasoning as follows:

Plaintiff was . . . demoted from sales to market research on January 15, 1974. The earliest date on which plaintiff could be said to have given notice to the Secretary of Labor is August 15, 1975, when plaintiff filed a written complaint with the Wage and Hour Administrator, alleging that he had been discriminated against, though he did not say he intended to file suit. *Powell, supra,* [*Powell v. Southwestern Bell Telephone Co.]* 494 F.2d [485] at 489 (holds this does not constitute notice); *Hiscott v. General Electric Co.,* 521 F.2d 632, 634 (6th Cir. 1975) (accord). Assuming *arguendo* that this constituted "notice," it is still more than 180 days after the allegedly discriminatory act. Plaintiff also contends that he was told by Mr. Samworth of the Wage & Hour Division shortly after he filed his August 15 complaint and by an

---

4. The facts relating to his April-June contacts with the Department of Labor are derived from Thomas' affidavit which accompanied his motion pursuant to Rule 10(e), F.R.A.P., for leave to supplement the record, which was carried with the case and which we hereby grant since these facts relate to the tolling issue which we pretermit.

5. Section 626(d) provides:
   No civil action may be commenced by any individual under this section until the individual has given the Secretary not less than sixty days' notice of an intent to file such action. Such notice shall be filed—
   (1) within one hundred and eighty days after the alleged unlawful practice occurred
   . . . .

unidentified employee of the Wage & Hour Division just before he filed his August 15 complaint that his transfer and demotion was a continuing violation. We believe that this would toll the running of the 180 day notice provision if it had happened within 180 days of the allegedly discriminatory act. *See, Moses v. Falstaff Brewing Corp.*, 525 F.2d 92, 94 (8th Cir. 1975). Plaintiff also argues that the notice time limit should not begin to run until plaintiff knew or should have known that he was demoted and transferred because of age discrimination. *Hiscott, supra,* 521 F.2d at 634 (questions knew or should have known as the proper standard); *contra; McGinley v. Burroughs Corp.*, 407 F.Supp. 903, 910 (E.D. Pa.1975) (concealment by defendant was willful). Again, assuming *arguendo* that this is correct, plaintiff was told in late October or early November 1974 that he could not be reassigned because duPont needed to make room for younger men in its field sales force. This should have put plaintiff on notice that age discrimination was possible. This was considerably more than 180 days before the earliest date plaintiff could have been said to have given notice, *i. e.,* August 15, 1975.

Plaintiff also contends that this was a continuing violation because of his repeated requests for reassignment to the New Orleans field sales force. If we were to adopt this view, there would be no effective time limit on the plaintiff's duty to give notice. This would be contrary to the authority in this area. *Hiscott, supra,* 521 F.2d at 635 (no continuing violation where plaintiff alleged that failure to relocate him forced him into early retirement); *Woodburn v. LTV Aerospace Corp.*, [531 F.2d 750] No. 75–4207 (5th Cir. May 14, 1976) (no continuing violation where plaintiff was discharged and defendant refused to rehire him even though there were job openings).

The Order made no mention of the request made by Thomas' counsel at the hearing to amend the complaint.

Subsequently, Thomas moved pursuant to Rule 59(e) F.R.Civ.P. to alter or amend the judgment and requested permission to amend the complaint. The memorandum in support of the motion stated that "[o]n October 22, 1975, DuPont announced that Bob Surman would replace Ken Fish in Houston, effective November 1, 1975. Surman is about 40 years old. Plaintiff, who is qualified for this field sales assignment, expressly asked to be placed in this opening. His request was denied." Thomas urged that DuPont's failure to give him the Houston job constituted a discrete ADEA violation which occurred well within the 180-day notice period. Allowing the complaint to be amended to allege this violation would thus cure the jurisdictional defect.[6]

Following a hearing, the District Court, on July 20, 1976, denied the motion to alter or amend without explanation. Thomas appeals both from the judgment of dismissal and the July order. He and the Secretary of Labor, appearing as amicus curiae, argue first that DuPont is guilty of a course of conduct which discriminates against an employee because of age. Such conduct amounts to a continuing violation of the ADEA such that the limitation period does not begin to run until the conduct ceases. Second, the District Court's refusal to allow Thomas to amend his complaint to allege a separate and distinct violation of the ADEA was reversible error. Third, the notice period should be tolled where warranted by equitable considerations, such as lack of knowledge of the discrimination, reliance on advice from the Secretary's representative, and lack of prejudice to DuPont. We agree that it was error to deny Thomas the right to amend the complaint.

### Making Amends

In *Conley v. Gibson*, 1957, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80, the Supreme Court stated, "[t]he Federal Rules reject the approach that pleading is a game of

---

**6.** This memorandum also referred to the April-June contacts with Wage and Hour which form the basis of the motion to supplement the record on appeal. See note 4, *supra.*

skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facili†ate a proper decision on the merits." The Court clearly indicated, *id.* at n.9, that Rule 15, F.R.Civ.P., relating to amended and supplemental pleadings, came within the teaching of Rule 8(f) that "all pleadings shall be so construed as to do substantial justice." Rule 15(a) itself states that "leave [to amend] shall be freely given when justice so requires." This view had prevailed in the Fifth Circuit before *Conley* and has been religiously followed since. *E. g., Millet v. Godchaux Sugars,* 5 Cir., 1957, 241 F.2d 264, 265 n.1; *Barber v. Motor Vessel "Blue Cat,"* 5 Cir., 1967, 372 F.2d 626, 627 n.1.

■ Amendment after dismissal for lack of subject matter jurisdiction pursuant to Rule 59(e) is also proper when the amendment will vest the court with jurisdiction. *Markert v. Swift & Co.,* 2 Cir., 1949, 173 F.2d 517; 3 Moore, Federal Practice (2d ed. 1974), ¶ 15.07[2], ¶ 15.10. As the Supreme Court stated in *Foman v. Davis,* 1962, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222, where the plaintiff had sought post-dismissal amendment:

> . . . In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

Thomas was guilty of nothing which would warrant denial of his request to amend when that amendment would vest the District Court with jurisdiction over his cause.

Accepting as true the facts contained in the record, the critical dates relating to the 180-day notice requirement of ADEA § 626(d)(1) are:

| | |
|---|---|
| Jan. 15, 1974 | Demotion and transfer. |
| Between late Oct. and Nov. 6, 1974 | First learned that age was a factor in demotion. |
| April 1975 | Told by Labor Dept. that complaint must be filed within 180 days of termination. |
| May–June 1975 | Told by Labor Dept. that violation was continuing. |
| June 23, 1975 | Met with and asked Director of Sales for transfer. Request denied. |
| July 2, 1975 | Written request for reinstatement and revision of performance report. |
| Aug. 15, 1975 | Filed age discrimination complaint with Labor Dept. |
| Oct. 22, 1975 | DuPont announced that Houston job applied for by Thomas would be filled by man younger than Thomas. |
| Nov. 12, 1975 | Thomas notified Labor Dept. of intent to sue. |

■ Although it would disclaim phrasing it in such harsh terms, what DuPont's position on appeal comes down to essentially is that once 180 days passed after either (a) the demotion and transfer, or (b) the time when Thomas first learned that age was a motivating factor in its decision, the company is forever insulated from a charge of age discrimination in demotion, non-promotion situations. We reject this theory.

It is true that this Circuit has ruled that meeting the 180-day requirement is a prerequisite to the right to file an ADEA suit. *Powell v. Southwestern Bell Tel. Co.,* 5 Cir., 1974, 494 F.2d 485, 487–88 (discusses "jurisdictional import"); *Edwards v. Kaiser Aluminum & Chem. Sales, Inc.,* 5 Cir., 1975, 515 F.2d 1195, 1199 (reading *Powell* as holding 180-day provision to be a mandatory, *jurisdictional* condition precedent to suit); *Charlier v. S. C. Johnson & Son, Inc.,* 5 Cir., 1977, 556 F.2d 761, 765 (recognizing and

following *Edwards'* reading of *Powell*).[7] Furthermore, the Court while consistently recognizing the possibility that under some circumstances equitable considerations might warrant tolling the 180-day period, has never reached that result. *Powell, supra,* 494 F.2d at 490 (in refusal to hire case, where plaintiff was expressly alerted to time limitations, informal action by Secretary in plaintiff's behalf not basis for reading notice section out of statute); *Edwards, supra,* 515 F.2d at 1200 (in wrongful discharge case, declined to reach question whether equitable considerations may ever result in tolling); *Woodburn v. LTV Aerospace Corp.,* 5 Cir., 1976, 531 F.2d 750, 751 (discriminatory discharge and failure to rehire not continuing violation which would toll 180-day notice requirement because defendant had no contractual obligation to rehire plaintiff); *Charlier, supra,* 556 F.2d at 765 (in wrongful discharge suit, if notice was given within 180 days of actual knowledge or acquisition of means of knowledge of ADEA rights, then District Court on remand should determine tolling issue pretermitted in *Edwards*); *Adams v. Federal Signal Corp.,* 5 Cir., 1977, 559 F.2d 433, 434 (even if 180-day requirement may be tolled, waived, or modified, no equitable basis for so doing where plaintiff in unlawful discharge case was responsible for posting on-premises notice of ADEA).

Similarly, we have thus far recognized in refusal to hire and wrongful discharge contexts only one "continuing" age discrimination violation—that which occurs when the defendant has "overt, documented company policies in full force and effect at the time suit was brought." *Powell, supra,* 494 F.2d at 489; *Woodburn, supra,* 531 F.2d at 751. The defendant's refusal to rehire after discharge even when others had been hired and fired after plaintiff's discharge, has been held not to be a continuing violation because of the practical effect of eliminating the notice provision. *Woodburn, supra.*

However, we have never faced—and we know of no other Court which has—the precise factual situation presently before us. Clearly, 180 days passed after Thomas' demotion and after Thomas first learned that age played a role in DuPont's decision, but before Thomas filed his letter of intent to sue. Equally as clear is the fact that his August 15 letter to the Department of Labor did not satisfy the notice requirement. *Powell, supra,* 494 F.2d at 489; *Hays v. Republic Steel Corp.,* 5 Cir., 1976, 531 F.2d 1307, 1312; *Dartt v. Shell Oil Co.,* 10 Cir., 1976, 539 F.2d 1256, 1259, *aff'd by equally divided Court,* 1977, 434 U.S. 99, 98 S.Ct. 600, 54 L.Ed.2d 270; *Clark v. Emerson Elec. Mfg. Co.,* N.D.Miss., 1977, 430 F.Supp. 216, 218.[8] But within 180 days of his November 12, 1975 letter, DuPont officials turned down a June 23 transfer request and apparently ignored a July 2 request for reinstatement and revision of his performance reports. In addition, despite Thomas' applica-

---

7. *But see* Conference Report, H.R.Rep. No. 95–950, 95th Cong., 2d Sess. 12 (1978), U.S.Code Cong. & Admin.News 1978, p. —— (accompanying the Age Discrimination in Employment Act Amendments of 1978, Pub.L. 95–256, 92 Stat. 189):

> The conferees agree that the "charge" requirement is not a jurisdictional prerequisite to maintaining an action under the ADEA and that therefore equitable modification for failing to file within the time period will be available to plaintiffs under this Act. See, e. g., *Dartt v. Shell Oil Co.,* 539 F.2d 1256 (10th Cir. 1976), affirmed by an evenly divided court, [434 U.S. 99,] 98 S.Ct. 600, 54 L.Ed. 2d 270 (1977); *Bonham v. Dresser Industries, Inc.,* 16 FEP Cases 510 (3d Cir. 1977); *Charlier v. S. C. Johnson & Son, Inc.,* 556 F.2d 761 (5th Cir. 1977).

8. Any claim based solely on Thomas' January 15, 1974 demotion is thus time-barred if not tollable by equitable considerations. *Charlier, supra; McGinley v. Burroughs Corp.,* E.D.Pa., 1975, 407 F.Supp. 903. However, if the allegations in the complaint concerning his demotion are true, those facts would certainly be relevant evidence which the fact-finder should consider in evaluating claims based on subsequent discriminatory acts. *See Hodgson v. First Fed. Sav. & L. Ass'n,* 5 Cir., 1972, 455 F.2d 818, 821 (evidence that for period of just over a year after effective date of ADEA, out of 35 tellers and trainees who were hired, none was over 40 and all but three were in their teens and twenties, relevant to plaintiff's claim); *Schulz v. Hickok Mfg. Co.,* N.D.Ga., 1973, 358 F.Supp. 1208, 1212 (evidence of defendant's behavior in similar cases is relevant to determination of reasons behind plaintiff's discharge).

tion, DuPont filled in October a Houston opening, for which Thomas qualified, with a younger man. If Thomas can allege and, after discovery, develop facts which would prove that these events (as well as all others) occurred, and that DuPont's action with respect thereto was impermissibly tainted with age considerations, *Wilson v. Sealtest Foods Division of Kraftco Corp.*, 5 Cir., 1974, 501 F.2d 84, 86, then one or more of these or other events may well constitute separate and distinct acts of discrimination within the meaning of the ADEA, namely, a denial of the "privileges of employment," or the deprivation of "employment opportunities," or acts adversely affecting "his status as an employee." 29 U.S.C.A. § 623(a)(1), (2).[9]

This is simply not a case of the plaintiff "sleep[ing] on his rights," *Edwards, supra*, 515 F.2d at 1199. After first having been led to believe that poor sales performance prompted the demotion, Thomas persistently sought to correct what he believed to be a mistake. When he was finally told that his age was the problem and that sales performance was really not in issue, he continued to seek correction of the performance reports fearing that the written record might survive the departure or retirement of superiors who could verify his sales record. Moreover, he continued to make

known his desire for reinstatement and transfer to New Orleans or an area nearby. Thus, Thomas kept DuPont "awake" to the fact that he was dissatisfied with his demoted status in Wilmington. Thomas should be allowed the chance to allege and prove if he can any separate ADEA violation which occurred 180 days before November 12, 1975. At a minimum, an allegation concerning the Houston opening satisfies the 180-day notice requirement to withstand a motion to dismiss. *See Wilson, supra*, 501 F.2d at 86.

■ We in no way mean to indicate that once an employee goes on record to express displeasure with an employer's action and thereafter holds his peace, the company can be liable for failing to remember the initial employee complaint every time a job for which he is qualified becomes available. Such a rule would be unfair, especially when a very large company like DuPont is involved. We merely hold that once 180 days have passed after one unlawful act, an employer cannot ignore repeated untimebarred attempts within the company to rectify the original wrong and thereby violate the ADEA anew with impunity. In such a case the policy considerations underlying the decisions strictly construing the 180-day notice requirement[10] are not disserved in

9. 29 U.S.C.A. § 623 provides in part:
   (a) It shall be unlawful for an employer—
   (1) to fail or refuse to hire or to discharge any individual *or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment,* because of such individual's age;
   (2) *to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee,* because of such individual's age . . . . .
   (Emphasis added.) The Department of Labor has interpreted § 623(a)(1) in 29 C.F.R. § 860.-50(c) (1977):
   (c) The phrase "terms, conditions, or privileges of employment" encompasses a wide and varied range of job-related factors including, but not limited to, job security, advancement, status, and benefits. The following are examples of some of the more common terms, conditions, or privileges of employment: The many and varied employee

advantages generally regarded as being within the phrase "fringe benefits," promotion, demotion or other disciplinary action, hours of work (including overtime), leave policy (including sick leave, vacation, holidays), career development programs, and seniority or merit systems (which govern such conditions as transfer, assignment, job retention, layoff and recall). An employer will be deemed to have violated the Act if he discriminates against any individual within its protection because of age with respect to any terms, conditions, or privileges of employment, such as the above, unless a statutory exception applies.
   The enforcing agency's interpretation is entitled to great deference. *See Griggs v. Duke Power Co.*, 1971, 401 U.S. 424, 433–34, 91 S.Ct. 849, 28 L.Ed.2d 158 (Title VII).

10. Ensuring that potential defendants become aware of their status and the possibility of litigation reasonably soon after the discrimination; promotion of good faith of employers during the 60-day conciliation period; preser-

any way because an entirely fresh discriminatory act is being challenged.

Having no indication that the issue will ever become critical because Thomas is entitled to amend his complaint, we once again pretermit the question of equitable tolling and express no view as to whether the facts here would warrant tolling. If it becomes critical, the District Court is instructed, as in *Charlier*, to decide this issue on remand.

REVERSED and REMANDED.

vation of evidence and records for use at trial, *Powell, supra*, 494 F.2d at 488; benefit to other employees; enhancement of employee-employer relations by encouraging voluntary rectification; preclusion of premature resort to courts, conserving judicial resources, *Edwards, supra*, 515 F.2d at 1198.