Bettye F. ANDERSON

v.

PACCAR, INC., a foreign corp. and Peterbilt Motor Co.

Civ. A. No. 77–3062.

United States District Court,
M. D. Tennessee,
Nashville Division.

Oct. 30, 1981.

Jinx Thomas Woods and Larry Woods, Nashville, Tenn., for plaintiff.

J. Alan Lips, Cincinnati, Ohio, William Ozier, Nashville, Tenn., for defendants.

## MEMORANDUM

JOHN T. NIXON, District Judge.

The above styled cause was heard in September, 1980. Proposed findings of fact and conclusions of law were submitted on December 1, 1980, and supplemented on May 18, 1981. Oral argument was heard on December 1, 1980.

Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., (Supp. IV 1974) hereinafter referred to as Title VII. This Court has jurisdiction of this action under 706(f)(3), 42 U.S.C. § 2000e–5(f)(3). This Court finds that plaintiff's claim is without merit.

Defendant Paccar, Inc., is a Delaware corporation authorized to do business in the State of Tennessee. Defendant Peterbilt Motor Company, a division of Paccar, Inc., is engaged in the manufacturing of tractor trailer trucks at the Madison facility. Defendants are employers within the meaning of Title VII.

Peterbilt employs, during normal business times, several hundred production and maintenance employees, who are represented by the United Auto Workers of America Union. Peterbilt also employs a large number of non-union salaried employees performing clerical, technical, and staff functions in an office building separated from the plant building.

Plaintiff Bettye F. Anderson was employed by Peterbilt from December 12, 1970, until February 21, 1975, in various salaried positions. She was initially hired as a "general clerk senior", salary grade 15. This position was the initial step on the ladder of progression to the position of "buyer" in the Purchasing Department. The company had a policy of advancing employees to the position of "buyer" in stages, and plaintiff was aware of that policy. Immediately prior to her January, 1974, promotion, the company announced that she was beginning the stages of promotion to "buyer". On April 15, 1974, she was promoted to "senior clerk specialist", grade 16. She was promoted to "buyer" grade 21, on July 1, 1974. This step by step ladder of progression was eliminated in October, 1975, during a change in management. Prior to plaintiff's employment by Peterbilt, the company had adopted an affirmative action policy regarding the promotion of women.

In August, 1974, the company transferred the departmental manager who had promoted Anderson, and replaced him with a man named Don Beason. Beason had been at the Madison plant at the time plaintiff was hired, but had subsequently been transferred to another facility. Anderson had known Beason as a superior prior to her promotions and had not liked him. She did not relish his return. From the time Beason took over the Purchasing Department in October, 1974, until her lay-off in February, 1975, plaintiff felt she was being harassed by Beason. This was probably true. However, all of the witnesses called by both sides who had worked under Beason testified that he was insensitive and unpleasant to one and all without regard to gender. Only the plaintiff testified that his attitude was sexist.

As a result of the economic recession of 1974, Peterbilt began a program of massive lay-offs that lasted into 1975. All but 36 of approximately 750 production and maintenance employees were laid off. For these workers the lay-off was conducted according to the procedures outlined in the Collective Bargaining Agreement. Salaried office employees were not covered by any employment contract. Two hundred and ten of 284 office employees were laid off.

In October, 1974, coincidental with the appearance of Beason at the Madison plant, the company's corporate officers provided lay-off guidelines for salaried office employees to the personnel department. These guidelines suggested that a non-mechanical means of selecting those to be laid off should be utilized rather than a procedure that relied upon the lack of seniority or similar criteria. The guidelines also directed the department to avoid eliminating all minorities. They provided that employees be laid off on a basis of a record of unsatisfactory or marginal performance. Prior performance reviews should be considered as well as current supervisory appraisals.

Each department manager was told each week how many employees he could retain for the following week. Each manager then made his selections for lay-off and submitted those recommendations to the plant manager who made the ultimate decision. The first layoff from the Purchasing Department occurred on November 15, 1974. At that time two males, one a clerk and the other a purchase planner who was an acting buyer, were laid off. On December 6, 1974, a male assistant traffic manager, a female general clerk, and a male buyer were laid off. The male buyer had held that position since January 8, 1973.

On January 24, 1975, a male buyer, working in that position since February 5, 1973, and a female clerk were terminated. A week later it became necessary to eliminate another buyer position. On February 1, 1975, plaintiff was demoted to "clerk specialist, sr.". She admits that this was a sound management decision, but she felt that one of the male buyers should have received the demotion. She did not file a discrimination complaint at that time.

On February 21, 1975, the company laid off Anderson, one of the male buyers who held the position since November 16, 1973, and a female secretary. On February 26, 1975, the company laid off another male buyer, who had been in that slot since November 16, 1973, a female clerk and a female purchase planner. Of the seven persons who served as buyer in late 1974, only one, a white male who was "senior buyer", was not laid off by the end of February, 1975. A senior buyer has more responsibility than a buyer and is paid at a higher salary. The plaintiff does not assert that she was laid off because she was female, only at the time of her demotions.

When Beason notified Anderson that she was being laid off, he told her that this termination was probably permanent and she should seek employment elsewhere. She received severance pay. The plaintiff did sign a "Salaried Personnel Termination of Service" form which stated the layoff was for lack of work and that the employee would be recalled if suitable work became available. However, plaintiff testified she did not believe that this was a promise or guarantee of re-employment. The termination form listed her occupation as buyer and her severance pay was based on a buyer's salary.

Two male buyers were later rehired. Both had more experience than Anderson and both had college degrees. Plaintiff does not have a college degree. One of these males had been a "senior buyer" with some supervisory responsibility. Both men were reemployed in April, 1975. In May, the plaintiff found out about their re-employment, and in October she visited the Peterbilt facility to discuss her re-employment. She had an informal conversation with a senior buyer in the Purchasing Department and received no official word on the possibility of her re-employment.

On November 1, 1975, the company transferred James McDannald, a male employed as assistant production control supervisor, to the position of senior buyer. On November 7, 1975, the company transferred Ron Fisher, a male rehired senior inspector, to a senior buyer position. Between February 27, 1976, and December 31, 1978, the company employed or transferred nine persons into buyer positions. Two of these were female, and all but one had college degrees. The one without a degree was a production planner from the Production Control Department who was temporarily assigned to

a buyer slot as part of a cross-training program.

In December, 1975, plaintiff saw a newspaper advertisement announcing openings for planner positions at Peterbilt, and made an application. By this time there had been a number of changes in management. According to the testimony of company officials there had been serious problems. at the Madison facility. That plant apparently had the lowest production and the lowest quality product of any Peterbilt operation in the country. The company decided that a major cause of the problem was the quality of the work force. In October, 1974, Dennis Howard was assigned to manage and upgrade the Madison plant, and Gene Kieffaber was named personnel manager over salaried office employees as well as for hourly employees. After the October, 1974 to March, 1975, layoffs, Howard instructed Kieffaber to upgrade the quality of the work force. Only about 450 of the 750 production and maintenance hourly workers were re-hired, and only 89 of the 210 laid off salaried people were recalled.

Plaintiff applied for re-employment with Kieffaber who reviewed her record as a prior employee. He consulted with Howard and a decision was made not to re-hire Anderson. She was informed of that decision, and in January, 1976, wrote a letter to the President of Paccar, Inc., in California, detailing complaints she had against the company. As a result of this communication, Howard was instructed to interview plaintiff and discuss her complaints, including her allegations of sex bias. Howard and Anderson met on March 17, 1976, and plaintiff was offered a job as insurance clerk in the Personnel Department. Two days later she informed Howard that she would not accept that job offer, and he informed her that she would not be considered for higher level positions because she was not considered qualified.

On April 2, 1976, Anderson filed a charge with the Equal Employment Opportunity Commission and with the Tennessee Commission on Human Development, alleging sex discrimination on the part of Peterbilt.

Apparently there was never any investigation into these charges by either agency. On November 9, 1976, at plaintiff's request, the EEOC issued a right to sue letter. Anderson received the letter on November 11, 1976, and 89 days later, on February 7, 1977, suit was filed in this Court.

The proper time-frame for Title VII litigation is well established. The alleged unlawful employment practice must have occurred within 180 days before the charge is filed, in this case April 2, 1976, in order for the Court to have jurisdiction to consider the alleged violations. 42 U.S.C. § 2000e–5(e); *United Airlines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977); *Geromette v. General Motors Corp.*, 609 F.2d 1200 (6th Cir. 1979). In *Mohasco Corp. v. Silver*, 447 U.S. 887, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980), the Supreme Court re-stated the need for procedural regularity in Title VII cases. It declared that the time provisions arose from a conviction that "... most genuine claims of discriminations would be promptly asserted and that the costs associated with processing and defending state or dormant claims outweigh the federal interest in guaranteeing a remedy to every victim of discrimination." *Id.* 100 S.Ct. at 2494. The Court also stated that the timetable established by Title VII reveals a clear legislature mandate for the prompt processing of all charges of employment discrimination. *Id.* 100 S.Ct. at 2496. The Court buttressed this assertion by stating that "... strict adherence to the procedural requirements specified by the legislature is the best guarantee of even-handed administration of the law." *Id.* 100 S.Ct. at 2497.

▪ The burden of proving compliance with the 180 filing requirements is on the plaintiff, *Geromette v. General Motors Corp.*, 609 F.2d at 7203. (Since plaintiff filed her charges with the Tennessee Commission for Human Development on the same date she filed her EEOC charges, the 180 day time limit applies to all of plaintiff's charges. *Mills v. National Distillers Products Co.*, 435 F.Supp. 72 (S.D.Ohio 1977); Tenn.Code Ann. § 4–21–115(a)). In order for plaintiff to meet this burden, she

must establish that any discriminations against her occurring before October 7, 1975, (the date that begins the 180 day period prior to the filing of the charge) is brought within the filing period.

The plaintiff specified the following acts of discrimination: 1) biased treatment by her supervisor prior to her layoff on February 21, 1975; 2) her reclassification to a lower position on January 24, 1975; 3) her failure to be rehired; 4) the rehiring of a white male to a buyer's job on April 18, 1975; 5) the transfer of two white males to buyer's jobs on November 1 and 7, 1975; 6) denial of her application for re-employment as a planner on December 19, 1975; and, 7) refusal to consider her for re-employment in a position of similar status thereafter.

Plaintiff claims that she did not know she was being discriminated against from the time of her demotions until shortly before she wrote a letter to the President of Paccar stating her complaints on January 22, 1976. Plaintiff also contends that the defendant deliberately concealed from her the discriminatory nature of its acts and is, therefore estopped from successfully asserting the bar of the filing deadline. Furthermore, plaintiff contends that defendant's acts were continuing violations which, although predating the filing period, were kept alive and carried over into the filing period.

■ Plaintiff testified she suspected discrimination as early as January, 1975. She has failed to establish that she was deliberately misled in regard to her re-employment rights, or that other employees were given information that she was not. The harassment of plaintiff by her supervisor prior to her layoff, be it discriminating or not, is not a continuing act and the demotions or re-classifications in January 1975, is not a continuing act. The Sixth Circuit Court of Appeals has held that that in the absence of a contractual or seniority right the failure of an employer to rehire a terminated employee is not a continuing violation. *Hiscott v. General Electric Co.*, 521 F.2d 632 (6th Cir. 1975).

In May, 1975, when she discovered that the defendant had re-hired a white male in a buyer position, according to her testimony, plaintiff formed the opinion that she had been the victim of sex discrimination. Having failed to file a charge of discrimination within 180 days, this claim is time barred. *See Villasenor v. Lockheed Aircraft Corp.*, No. CV77–4610–WMB, 20 EDP P30,97, 26 FEP Cases 792 (D.C.Cal. Dec. 28, 1978), and *Jones v. American Totalisator*, No. M–76–1024 Civil (D.C.Md. June 29, 1978).

■ The fact that plaintiff made continuing efforts to be re-employed after May, 1975, does not toll the statute. The fact that an employer decides not to hire or to re-hire and in doing so discriminates does not constitute a continuing violation simply because the effects of the discriminatory act are continuing. *See Goldman v. Sears, Roebuck & Co.*, 607 F.2d 1014 (1st Cir. 1975), *cert. denied*, 445 U.S. 929, 100 S.Ct. 1317, 63 L.Ed.2d 672 (1980).

The rejections of plaintiff for the planner's job was possibly a new and separate act of discrimination. However, this act was not alleged in the charge filed with the EEOC. The courts have recognized that a plaintiff's Title VII complaint is limited to the scope of the EEOC investigations that could reasonably be expected to develop from the charge. *See, Tippler v. E. I. DuPont de Nemours and Co.*, 443 F.2d 125 (6th Cir. 1977).

\* \* \*

■■ Plaintiff has the burden of proving unlawful discrimination because of sex. First, the plaintiff must make a prima facie case of unlawful discrimination, and then, if the defendant employer articulates a legitimate, non-discriminatory reason for its treatment of the employee, it is the burden of the plaintiff to prove that the reasons given by the defendant are a pretext for unlawful discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. Putting aside the bar of the statutory limitations, the plaintiff has not met this burden. 1) As stated previously, the evidence in no way supports plaintiff's claim that her supervisor treated her different from male employees. 2) De-

fendant has demonstrated a legitimate business reason why it demoted plaintiff from buyer to clerk in 1975. She was the only remaining buyer who could perform the job. Otherwise she would have been laid off. 3) At the time of plaintiff's lay off male buyers with more experience were laid off first. The only two buyers returned, both white males, were more qualified—according to plaintiff's own testimony. 4) Defendant has demonstrated that it had legitimate business reasons to up-grade the educational and experience standards of its staff after the layoff period. 5) The plaintiff failed to demonstrate that her educational background and performance on the job prior to layoff qualified her for re-employment under the new standards. 6) The plaintiff has not proved that the company had a policy of discriminating against females. Male buyers were hired after the layoffs.

The plaintiff has failed to prove that defendant discriminated against her because of her sex, and failed to file a timely charge with the EEOC, and failed to include all allegations of her complaint within the charge. For the reasons set forth in this memorandum, plaintiff's complaint is dismissed and judgment and costs will be entered for the defendant. An appropriate Order will be entered contemporaneously with this Memorandum.