Maria Lina SANTOS, Plaintiff,

v.

RUSH–PRESBYTERIAN–ST. LUKE'S
MEDICAL CENTER, Defendant.

No. 85 C 7598.

United States District Court,
N.D. Illinois, E.D.

July 23, 1986.

Maria Lina Santos, pro se.

Bruce R. Alper, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Maria Santos, a 46–year old Filipino woman, was a nurse at Rush-Presbyterian-St. Luke's Medical Center (Rush) from December 1974 until September 28, 1983. She is suing Rush *pro se* under Title VII, 42 U.S.C. § 2000e *et seq.,* and the Age Discrimination in Employment Act (ADEA),[1] for discrimination which occurred during her employment and which led to her discharge, as well as for retaliation for filing an EEOC charge. Rush has moved for dismissal of the age claims and some of the national origin discrimination claims, all on procedural grounds.

---

1. Plaintiff does not identify the ADEA in her amended complaint, although every count which alleges national origin discrimination also alleges age discrimination. Given the broad remedial purposes of the ADEA, the lack of ambiguity in plaintiff's complaint, and her *pro se* status, the court will not attribute any legally significant consequence to her failure to identify the ADEA. *Cf. Heiar v. Crawford County,* 746 F.2d 1190, 1196 (7th Cir.1984), *cert. denied* —— U.S. ——, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985); *Dussouy v. Gulf Coast Investment Corp.,* 660 F.2d 594, 604 (5th Cir.1981).

## FACTS

For purposes of the motion we take the facts alleged in plaintiff's EEOC charge and amended complaint as true.

Plaintiff worked at Rush as a staff nurse under a Ms. Ann Crudele. Santos was the only Filipino employee under Crudele's supervision and was treated worse than white employees similarly situated. When patients complained about her work she was officially reprimanded by Ms. Crudele, who "shrugged off" errors made by and complaints about white nurses.

Plaintiff identifies two discrete periods of discrimination. The first occurred between 1978 and 1980 and resulted in a forced resignation that the hospital allowed plaintiff later to rescind. It is unclear from the pleadings when exactly Rush reinstated Ms. Santos.

However, plaintiff claims Ms. Crudele began again to harass her in 1982, first by demoting her and then by singling her out for disciplinary actions which she did not deserve. According to the hospital records, the demotion occurred August 2, 1982. She was reprimanded officially in November 1982 and March 1983.

On August 18, 1983 plaintiff filed her first EEOC charge, complaining of national origin discrimination. On September 28, 1983 she was discharged. On October 24, 1983 she filed a retaliation claim with the EEOC, which was treated by the agency as an amendment to the original charge. At some point after that she went back to the EEOC with her age discrimination claim. (Rush received a charge form to that effect on January 17, 1985.) How the EEOC treated this additional charge is unclear.

## LAW

### A. The Age Discrimination Claim

■ Defendant's arguments regarding the deficiencies of Santos' age claim break down into two categories: the claim was written and processed by EEOC in a manner which did not give Rush fair notice of the charges, and the claim was untimely.

On the question of timeliness, defendant states that it first heard about the age discrimination claim from the EEOC in November 1984 and first received a charge form alleging age discrimination on January 17, 1985. On the question of notice, the defendant argues that it was not sufficiently appraised of the conduct plaintiff considered age discrimination because the charge form said only:

> Complainant was employed with respondent for approximately nine years from December 9, 1984. She was born on September 23, 1939.

Further, the form is not dated and has no EEOC charge number identifying it. Defendant wonders whether this claim was ever officially filed with the EEOC.

Defendant's timeliness arguments have merit given the ADEA's filing requirement of 300 days in Illinois [2] if the delay in bringing the age claim is due to plaintiff's failure to act. However, it is impossible to tell from the record why EEOC did not contact Rush regarding the age claims until November 1984, and why Rush did not receive the incomplete charge form until January 1985. It is possible that the plaintiff amended her charge early in the process and EEOC delayed in acting on the amendment. The court will not impose a procedural barrier to the plaintiff's claims when the possibility exists that error lies with the administrative agency. *See McKee v. McDonnell Douglas Technical Services, Co.*, 700 F.2d 260, 263–264 (5th Cir.1983) (tolling filing requirement under Title VII when procedure defect was EEOC's fault). *See also* 118 Cong.Rec. 7167 (1972).[3]

---

2. *See Anderson v. Illinois Tool Works, Inc.*, 753 F.2d 622 (7th Cir.1985), holding that plaintiff has 300 days to file with the EEOC even if the plaintiff has instituted no state agency proceedings.

3. The section-by-section analysis of the statute of limitations provision in Title VII, which is quoted at 118 Cong.Reg. 7167 (1972), states:
   This subsection as amended provides that charges be filed within 180 days of the alleged unlawful employment practice. Court deci-

The notice arguments, inasmuch as they are based on the same incomplete EEOC form, also suffer from an accountability problem. The charge, if such it was, at least suggests that age is the basis of the claim, as it specifically sets forth a birthdate showing plaintiff was over 40 at the time of the alleged discrimination. The Seventh Circuit has stated that the standard for the relationship between the charge and the complaint is:

> The complaint in the civil action may properly encompass any discrimination like or reasonably related to the allegations of the charge and growing out of such allegations.

*Jenkins v. Blue Cross Mutual Hospital Insurance Co.*, 538 F.2d 164, 167 (7th Cir.), *cert. denied* 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976), *quoting Danner v. Phillips Petroleum Co.*, 447 F.2d 159, 162 (5th Cir.1971).[4] The standard has been applied to encompass allegations in the complaint which can be inferred from the charge. *Rizzo v. WGN Continental Broadcasting Co.*, 601 F.Supp. 132, 134 (N.D.Ill.1985); *see also Scaramuzzo v. Glenmore Distilleries Co.*, 501 F.Supp. 727, 730 (N.D.Ill.1980). The burden of making these inferences rests with the defendant, at least initially, especially here where the plaintiff is *pro se* and therefore cannot be expected to establish a professional paper trail.

"[T]he ADEA is a broad remedial statute that should be liberally construed and broadly applied...." *Scaramuzzo*, 501 F.Supp. at 730. For this reason, rather than dismiss the plaintiff's claims at this point the court directs her to explain the circumstances around the filing of her age claim with the EEOC, including when it was filed and any instructions or advice the EEOC provided her when she filled out the form.[5] To assist the plaintiff in making her case the court grants her petition for appointment of counsel.[6]

## B. The National Origin Discrimination Claims

■ Defendant has moved to dismiss the national origin claims which arose over 300 days before the date of plaintiff's first EEOC charge. Defendant relies on the provision in Title VII that:

> ... such charge shall be filed by or on behalf of the person aggrieved within 300 days after the alleged unlawful employment practice occurred....

---

sions under the present law have shown an inclination to interpret this time limitation so as to give the aggrieved person the maximum benefit of the law; it is not intended that such court decisions should be in any way circumscribed by the extension of the time limitations in this subsection. Existing case law which has determined that certain types of violations are continuing in nature, thereby measuring the running of the required time period from the last occurrence of the discrimination and not from the first occurrence, is continued, and other interpretations of the courts maximizing the coverage of the law are not affected. It is intended by expanding the time period for filing charges in this subsection that aggrieved individuals who frequently are untrained laymen and who are not always aware of the discrimination which is practiced against them, should be given a greater opportunity to prepare their charges and file their complaints and that existent but undiscovered acts of discrimination should not escape the effect of the law through a procedural oversight. Moreover, wide latitude should be given individuals in such cases to avoid any prejudice to their rights as a result of government inadvertence, delay or error.

Although this language expresses Congress' intent regarding Title VII, its values are equally applicable to the ADEA. Our discussion of the continuing violation doctrine, *infra*, also relies on this language.

4. *Jenkins* was a Title VII case, but the same standard applies in an ADEA case. *Scaramuzzo v. Glenmore Distilleries Co.*, 501 F.Supp. 727, 730 (N.D.Ill.1980).

5. Plaintiff did not respond to defendant's motion, which we have treated as fully briefed. However, given the factual ambiguities and the plaintiff's *pro se* status, the court is hesitant to rule at this stage.

6. Plaintiff has met all the factors outlined in *Jones v. WFYR Radio/RKO General*, 626 F.2d 576, 577 (7th Cir.1980), *rev'd on other grounds sub nom. Randle v. Victor Welding Supply Co.*, 664 F.2d 1064 (7th Cir.1981), which go into determining whether counsel should be appointed.

42 U.S.C. § 2000e–5(e).[7] This provision operates as a statute of limitations which can be tolled for equitable reasons. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982).

As noted earlier, plaintiff identifies two discrete periods of discrimination. Applying this 300–day limitation to the first period—1978 through 1980—is easy. By plaintiff's own admission the discrimination stopped in 1980 and did not begin again until 1982. Plaintiff cannot claim continuity between the two periods while simultaneously admitting discontinuity. Because the events leading up to and including the 1980 forced resignation occurred well more than 300 days before plaintiff filed her first EEOC charge, these claims are time-barred.

Applying the 300–day limitation to the second period of discrimination is considerably more difficult. Plaintiff claims a series of discriminatory acts, including a demotion on August 2, 1982 and two reprimands in November 1982 and March 1983, all connected by an ongoing practice of harassment. Some of these acts fall outside the 300–day limitation which, if counted backwards from the date of filing on August 13, 1983, produces November 12, 1982 as the cutoff date. Defendant wants to exclude these acts from the complaint. Given the sequence of events, at issue is the status of plaintiff's demotion.

Defendant argues that the court should cut off any claims which arose more than 300 days before the plaintiff filed her charge. Some courts have subscribed to this somewhat mechanical use of the 300–day limitation. *See* Schlei & Grossman, *Employment Discrimination*, 2d ed., at 1049 n. 104 (1983). For example, the court in *Gill v. Monroe County Dept. of Social Services*, 79 F.R.D. 316 (W.D.N.Y.1978), relied on *United Air Lines v. Evans*, 431

U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), to hold that events which took place prior to the 300–day mark could not "establish liability or provide the basis for relief." 79 F.R.D. 316, 331 (W.D.N.Y.1978).

■ We believe that this approach is an incorrect application of *Evans*. That case involved a stewardess working for United who had been forced to resign under a no-marriage rule that was, after her resignation, found to violate Title VII. Because she did not file a charge with the EEOC within the filing period charging illegal separation, "[a] claim based on that discriminatory act is therefore barred." *Evans*, 431 U.S. at 555, 97 S.Ct. at 1887. However, United rehired Evans four years later as a new employee and refused to credit her with seniority which she had accumulated during her first employment period. She claimed this refusal violated Title VII because it "gives present effect to that past illegal act". *Id.* at 557, 97 S.Ct. at 1888. The Supreme Court held that because Evans had not made out a Title VII violation which occurred during the filing period her claim was time-barred. *Id.* at 558, 97 S.Ct. at 1889.[8] The court contrasted the case with *Franks v. Bowman Transportation Co.*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976), upon which the Court of Appeals had relied, in this way:

> When that case reached this Court, the issues relating to the timeliness of the charge and the violation of Title VII had already been decided; we dealt only with a question of remedy. In contrast, in the case now before us we do not reach any remedy issue because respondent did not file a timely charge based on her 1968 separation and she has not alleged facts establishing a violation since she was rehired in 1972.

---

7. Considerable dispute has centered on how exactly to read this provision, *see Mohasco Corp. v. Silver*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980) and *Zewde v. Elgin Community College*, 601 F.Supp. 1237, 1241–42 (N.D.Ill.1984), but defendant avoids the dispute by giving plaintiff the full 300 days and the court will not

enter into the fray without defendant's prompting.

8. Justices Marshall and Brennan in dissent argued not with the requirement that a present violation exist, but with the meaning of "violation" in the context of the case.

*Id.* 431 U.S. at 559, 97 S.Ct. at 1889. (footnotes omitted). It is clear that *Evans* holds only that the defendant's violations did not continue into the present—not that any violation which occurs before the filing date cannot be the basis for relief. Such a violation is an appropriate basis of relief if it is continuing in nature and "at least one of the acts complained of falls within the limitation period". *Scott v. St. Paul Postal Service*, 720 F.2d 524, 525 (8th Cir.1983), *cert. denied* 465 U.S. 1083, 104 S.Ct. 1453, 79 L.Ed.2d 770 (1984).

Thus, rather than count back 300 days from the last violation to determine if a charge has been timely filed, the proper sequence of steps is to first determine when the alleged discrimination occurred and then count forward 300 days from that time. Pinpointing the discriminatory event is a far more elusive exercise than it sounds, partly because of factual ambiguities—plaintiffs often allege multiple events occurring at different times which in their minds together compose the alleged discrimination—and partly because there are policy considerations—encouraging plaintiffs to assert their rights and protecting defendants from stale claims—which intersect the factual disputes.

■ Pinpointing the discrimination when multiple events are alleged, some of which fall outside the filing period, is aided by the continuing violation doctrine.

Prior to *Evans*, "continuing violations" were argued on at least three theories: (1) "pattern of ongoing discrimination," in which the focus was upon whether an act of discrimination had occurred within the charge filing period and was part of the "pattern"; (2) the "maintenance of a discriminatory system," *e.g.*, seniority, promotion, or transfer systems; and (3) the "present effects of past discrimination." By focusing in *Evans* on whether a present *violation* exists, the Court critically undercut the third, "present effects of past discrimination," theory. The first and second "continuing violation" theories have proved more resilient....

Schlei & Grossman at 1046. The first theory often takes the form of allegations of covert discrimination "evidenced only by a series of discrete, allegedly discriminatory, acts". *Stewart v. CPC International, Inc.*, 679 F.2d 117, 121 (7th Cir.1982). We are concerned here with this theory, *i.e.*, whether the plaintiff's demotion in August of 1982 was part of a pattern of ongoing discrimination or an isolated act whose only relationship to the time within the filing period is that its effects were felt then. *See Janikowski v. Bendix Co.*, 603 F.Supp. 1284, 1291 (E.D.Mich.1985).

A finding of a "pattern of ongoing discrimination" cannot be based solely on the continued existence of an employment relationship, *i.e.*, on the theory that if the employment relation continues so does the original harm. "This theory is ... indistinguishable from the continuity-of-effect theory rejected by the Supreme Court in *Evans*." Jackson & Matheson, *The Continuing Violation Theory and the Concept of Jurisdiction in Title VII Suits*, 67 Geo.L.J. 811, 822 (1979). *See also Goldman v. Sears, Roebuck & Co.*, 607 F.2d 1014, 1018 (1st Cir.1979), *cert. denied* 445 U.S. 929, 100 S.Ct. 1317, 63 L.Ed.2d 762 (1980) ("a complaint must indicate that not only the injury but the discrimination is in fact ongoing"). It is essentially this reasoning which led the Supreme Court to its conclusion in *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), and which leads us to reject a continuing violation argument in a case where the only alleged acts of discriminatory treatment occurred before the filing period, even though the acts resulted in official reprimands that later contributed to plaintiff's termination. *See Arna v. Northwestern University*, 640 F.Supp. 923 (N.D.Ill.1986).

However, courts have had more difficulty determining what a pattern of ongoing discrimination is, than what it is not. While some courts focus the inquiry solely on whether the particular acts complained of constitute a "completed act at the time it occurred," *Lawson v. Burlington Indus-*

*tries, Inc.*, 683 F.2d 862, 864 (4th Cir.), *cert. denied* 459 U.S. 944, 103 S.Ct. 257, 74 L.Ed.2d 201 (1982), we find this approach of little help because any employment act is a completed one. This form of argument was expressly rejected in *Collins v. Manufacturers Hanover Trust Co.*, 542 F.Supp. 663 (S.D.N.Y.1982). The case involved age and sex discrimination in that plaintiff was not accorded the same opportunities, working conditions or salary as her male counterparts. A number of the acts alleged occurred within the filing period; several, however, fell outside the period. The crucial issue was "the status of those acts." *Id.* at 669. Defendant argued that they were untimely because each one was "discrete." *Id.* However, the court found that pinpointing the discrimination requires both a look at the nature of the act and how it impacted plaintiff's position with the employer, *i.e.*, whether the plaintiff was experiencing ongoing discriminatory intent or the "current effects of past discrimination." *Id.* at 670.

The *Collins* approach is in keeping with the analysis recently outlined by the Fifth Circuit in *Berry v. Board of Supervisors of L.S.U.*, 715 F.2d 971 (5th Cir.1983). The court in that case outlined three (non-exhaustive) questions to ask when considering a continuing violation claim:

> Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? ... Are the alleged acts recurring ... or more in the nature of an isolated work assignment or employment decision? ... Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the average consequences of the act is to be expected without being dependent on a continuing intent to discriminate?

715 F.2d at 981.

Those cases suggest a tension between the diligence aspect of timeliness and the continuing violation concept. If an employee is impacted by two employment decisions, the first one being untimely, it may be that the employee had no reason to suspect that the first decision was discriminatorily motivated until the second decision occurred. This raises tolling (not timing) considerations. *See Ortiz v. Chicago Transit Authority*, 639 F.Supp. 310, 312–313 (N.D.Ill.1986). It may be that the first decision was of such a nature and significance that the employee reasonably had to realize that the decision may have been prompted by unlawful motives. We believe, however, that it is helpful to accept the pattern concept at face value in analyzing this timing problem. A plaintiff can establish a violation which includes the earlier act if he or she can prove the later decision was the result of a continuing discrimination having earlier origins and motivating the earlier decision as well.

The real issue in these cases is whether a reasonable inference can be made, given the defendant's conduct, that the intent to discriminate which allegedly motivated one employment act continued to exist with enough force to motivate subsequent acts. All the cases discussed in this opinion involve the "disparate treatment" branch of Title VII litigation, and this branch requires proof of intent. *See International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335–336 n. 15, 97 S.Ct. 1843, 1854–55, n. 15, 52 L.Ed.2d 396 (1977); *Regner v. City of Chicago*, 789 F.2d 534, 537 (7th Cir.1986). Because direct evidence of discriminatory intent exists mostly in plaintiffs' dreams, courts rely on circumstantial evidence. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). When analyzing the pleadings, the quest for circumstantial evidence translates into a determination of whether any reasonable inference of discriminatory intent can be made from the facts as pleaded.

For example, here plaintiff claims in her EEOC charge that she complained to her supervisor about her discriminatory treatment. While we do not know if Santos complained of her demotion specifically or

when she complained to her supervisors, the possibility exists that she kept the defendant "awake to the fact that [she] was dissatisfied with [her] demoted status," *Thomas v. E.I. DuPont de Nemours Co., Inc.*, 574 F.2d 1324, 1331 (5th Cir.1978), and therefore the demotion can be seen as a continuing wrong.

The *Thomas* opinion is instructive on this point. In that case the plaintiff was demoted outside the filing period. However, within the filing period "DuPont officials turned down a ... transfer request and apparently ignored a ... request for reinstatement and revision of his performance reports. In addition, despite Thomas' application, DuPont filled ... a[n] ... opening for which Thomas qualified with a younger man." *Id.* at 1330–1331. The court reversed a dismissal of Thomas' complaint on timeliness grounds, stating:

> We in no way mean to indicate that once an employee goes on record to express displeasure with an employer's action and thereafter holds his peace, the company can be liable for failing to remember the initial employee complaint every time a job for which he is qualified becomes available.... We merely hold that once 180 days have passed after one unlawful act, an employer cannot ignore repeated untime-barred attempts within the company to rectify the original wrong and thereby violate the ADEA anew with impunity.

*Id.* at 1331. It is important to note that the court relied both on the fact that Thomas complained within the filing period and on the fact that he alleged that defendant could have done something about his situation and failed to do so. *Cf. Corbin v. Pan American World Airways, Inc.*, 432 F.Supp. 939, 944 (N.D.Cal.1977) (failure to promote was "ongoing" when positions plaintiff sought were available and plaintiff also complained of unequal pay, which was a present violation); *Zagars v. Gettysburg College*, 446 F.Supp. 1178 (M.D.Pa.1978)

(repeated refusals to promote plaintiff to job she was promised was "ongoing" because at least one refusal occurred within the filing period and a promise had been made).

In these crucial respects *Thomas* differs from *Goldman*, which also involved a demotion. In that case, Goldman argued that his

> repeated request to be retransferred to the large appliance division, followed by Sears' alleged refusal to honor these requests, constituted evidence of the ongoing nature of the violations, which arguably continued up to and through the filing of all charges.

607 F.2d at 1018. But the court found that because there was "no indication that when the refusals were made a position was open ... or would have been opened but for discrimination against appellant," *id.* at 1019, his claim was not ongoing. The court so held to avoid the implication that "every demotion could be turned into a continuing violation merely by pleading that plaintiff had continued to protest unsuccessfully." *Id.* *See also Gilliard v. New York Public Library*, 597 F.Supp. 1069 (S.D.N.Y.1984).[9]

The conduct of the defendant in *Thomas* was of a kind from which a reasonable inference of intent could be drawn, whereas the conduct in *Goldman* was not. In *Thomas*, the defendant was aware of the plaintiff's complaints, could have done something about them, did nothing, and later hired a younger man for an opening that plaintiff requested and for which he was qualified. It is not unreasonable to infer that the intent that motivated the original demotion also motivated the subsequent hiring of the younger man. In *Goldman*, on the other hand, the defendant was aware of plaintiff's complaints, but there was no indication, as the court found, that the defendant could have responded to them.

---

**9.** It is also important to note that while Thomas' demotion itself was outside the filing period, his efforts to get reinstated or transferred were not. When this is not the case, there is no present violation and therefore the demotion claim would be time-barred. *Anderson v. Paccar, Inc.*, 528 F.Supp. 181 (M.D.Tenn.1981).

It is not said when these refusals [to retransfer] occurred, nor are any facts stated indicating that the refusals to retransfer (as distinct from the original transfers) were motivated by a discriminatory animus.

*Goldman,* 607 F.2d at 1018–19.

The complaint here walks the thin line between *Thomas* and *Goldman.* However, two factors keep us from dismissing the plaintiff's demotion claim at this point. First we must remember that even though courts have "adopted a far less receptive attitude towards claims alleging continuing violations, after *Evans,*" Schlei & Grossman at 1014, Congress expressly intended for doctrines such as this one to be interpreted to "maximiz[e] the coverage of the law." 118 Cong.Rec. 7167 (1972) (*quoted* in full at footnote 3, *supra.*) Second, the standard for pleading requirements set down in *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), and recently reiterated in *Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), apply to Title VII pleadings, especially when the plaintiff is an untrained lay person. Finding a continuing violation is a question of fact. *See Anderson v. Montgomery Ward & Co., Inc.,* 627 F.Supp. 1562, 1569 (N.D.Ill.1986). *See also Thomas,* 574 F.2d at 1331 (reversing a dismissal). We do not want to dismiss (which is in effect a judgment on the merits) based on a factual picture which may be incomplete. We choose, rather, to deny defendant's motion at this time, which will give the plaintiff and her court-appointed attorney a chance to amend her complaint. However, we remind the plaintiff that if she cannot establish both that she kept defendant apprised of her dissatisfaction with her demotion and that the possibility of rectifying her situation existed (or representations to that effect were made to her) and was not acted upon for discriminatory reasons, or if she cannot establish otherwise that the subsequent reprimand stemmed from a continuing and related pattern of discrimi-

nation which also was the cause of her earlier demotion, then her demotion claim is no more than a single isolated incident and is time-barred.[10]

## CONCLUSION

Defendant's motion to dismiss is denied and plaintiff's petition for appointment of counsel is granted.

---

**10.** Even if time-barred, it may well be available as evidence on the claims which are not so

barred. *Collins,* 542 F.Supp. at 670. *See also Evans,* 431 U.S. at 558, 97 S.Ct. at 1889.