Derrick ARNA, Plaintiff,

v.

NORTHWESTERN
UNIVERSITY, Defendant.

No. 84 C 4914.

United States District Court,
N.D. Illinois, E.D.

July 22, 1986.

Michael A. Perlstein, Chicago, Ill., for plaintiff.

Lawrence I. Kipperman, Julie O. Allen, Sidley & Austin, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiff Derrick Arna ("Arna") brings this suit against defendant Northwestern University ("Northwestern") alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* Briefly, Arna alleges that he was subject to adverse and prejudicial treatment because of his race while employed by Northwestern. Moreover, he alleges the prejudicial treatment continued up to and including his wrongful discharge by Northwestern on September 26, 1983.

Northwestern denies that racial discrimination played any part in its discharge of Arna. Rather, Northwestern submits that Arna was discharged due to poor work performance and insubordinate behavior. The parties have engaged in discovery, including a lengthy and detailed deposition of Arna. In addition, numerous documents have been submitted to support the claims of both parties. Discovery is now closed and Northwestern has moved for summary judgment on two separate grounds. First, Northwestern contends that Arna's claims of discrimination in the landscaping department are time-barred due to Arna's failure to file a timely charge with the Equal Employment Opportunity Commission ("EEOC"). Second, it argues that there is

no genuine issue of material fact concerning Arna's allegations of race discrimination in his discharge. For reasons stated below, this court finds that the claims of discriminatory treatment in the landscaping department are time-barred and grants the motion for summary judgment as to the discriminatory discharge claim.

## FACTS

The following relevant facts are gleaned from Arna's complaint and lengthy deposition. Arna, a black man, was hired by Northwestern on August 31, 1981, as a custodian. On June 14, 1982, Arna, along with three other black custodians, was transferred from the custodial department to the landscaping department. The transfer was precipitated by a general layoff in the custodial department. Arna was given an opportunity to transfer because of his previous outstanding work record. It was after this transfer that Arna's employment problems began.

While in landscaping, Arna experienced numerous problems with his supervisor. Arna alleges that he was repeatedly singled out by his supervisor and treated unfairly. Specifically, in his deposition, Arna recalls numerous occasions where he was assigned the most difficult jobs without any assistance from other employees. At the same time, he maintains, white and Mexican employees were allowed to do no work at all and often engaged in personal activities while on the job (Arna dep. at 47, 49, 50–51, 53–54). Northwestern, however, points to several instances where his supervisor reported him for poor work habits and a bad attitude.

Arna worked for the landscaping department until February 28, 1983. The record reveals that Arna contacted the EEOC shortly after his transfer to this department, complaining of unequal treatment. During the eight months he was there he also complained to his supervisor and persons in the personnel office at the university about his work load in comparison to other workers, the fact that he did not receive a university raise while others re-

ceived such raises, and concerning overtime. Northwestern suspended Arna from February 28, 1983 through March 7, 1983, allegedly because of his poor work habits and bad attitude. On March 8, 1983, he was allowed to transfer back to the custodial department, but on "final warning status."

Back in the custodial department the supervisor considered the quality of Arna's cleaning work very satisfactory. However, he continued to have employment difficulties. There is evidence of reports that on occasion he could not be found in his work area during work periods, and that he was reluctant to wash windows except on an overtime basis, but nevertheless failed to appear on a Saturday for which he was scheduled to do windows. Northwestern discharged him immediately after the latter incident. Arna admits in his deposition that he was not discriminated against while in the custodial department, where both his immediate supervisors were themselves black. However, Arna states that the writeups he received in this department were the result of misunderstandings between himself and his supervisor and not the result of an uncooperative attitude or poor work performance, as Northwestern alleges.

Northwestern terminated Arna's employment on September 26, 1983. It gave as a reason for the termination Arna's insubordination and poor attitude on the job, as evidenced by the numerous critical writeups he received both in landscaping and in custodial. Arna filed a charge of employment discrimination with the EEOC on March 2, 1984. On March 23, 1984, he received a right-to-sue letter from the EEOC. Arna filed his complaint on May 24, 1984.

In his suit Arna sets out three claims for relief based on Title VII, 42 U.S.C. § 2000e et seq. In his first claim Arna alleges that his transfer to the landscaping department in June 1982 was racially motivated. Second, Arna claims race discrimination after the transfer with respect to the terms, conditions and privileges of his employment.

He alleges that the discrimination was manifest in the type of work he was assigned in the landscaping department. In his third claim Arna alleges that the termination of his employment was racially motivated and without cause.[1]

## DISCUSSION

Northwestern has moved for summary judgment on two grounds. The first ground relates to the timeliness of his EEOC charge. Under the proper section for filing charges with the EEOC, 42 U.S.C. § 2000e–5(e), the charge must be filed with the EEOC within 180 days after the alleged unlawful employment practice occurred.[2] Northwestern contends that for any claim of discriminatory treatment in landscaping, this 180–day charge filing period began to run no later than March 8, 1983, the day Arna was transferred back to the custodial department. Since counts I and II complain of discrimination on transfer to and while in the landscaping department, Northwestern maintains that his filing of his charge nearly one year after he left that department was not timely and any recovery for these acts is time-barred.

Arna, on the other hand, maintains that the discrimination began in the landscaping department and ended with his wrongful discharge on September 26, 1983. Apparently relying on the continuing violation theory used in discrimination cases, Arna contends the charge filing period did not begin to run until September 26, 1983. Therefore, his charge was timely and his claims are not barred.

Northwestern also moves for summary judgment on the ground that Arna's termi-nation was based on a legitimate, nondiscriminatory reason, i.e., poor work performance. Arna counters Northwestern's argument by asserting that its reasons for discharging him are a mere pretext for discrimination.

■ This court finds that Arna filed his charge too late for it to cover the alleged discriminatory treatment in the landscaping department and relief for those acts is barred. The court also finds that no genuine issue of fact exists as to whether Arna's discharge was discriminatory in violation of Title VII since there is no evidence of intent to discriminate when the decision to fire him was made.

A prerequisite to initiating a suit for violation of Title VII is the filing of a timely charge with the EEOC. Title VII provides in pertinent part:

> A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred ... except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a state or local agency ... such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred....

42 U.S.C. § 2000e–5(e).

In the present case the charge was filed with the EEOC on March 2, 1984. The defendant's argument is that Arna's claims are not timely because the alleged unlawful discriminatory treatment occurred, as Arna admits, while he was in the landscaping

---

1. Arna also includes in his third claim a charge that Northwestern continued to discriminate against him after he was discharged by giving false and derogatory statements to future employers. Arna was asked to name specifically whom Northwestern had contacted after his discharge which caused him to have difficulty finding future employment. He was unable to recall anyone. In fact, the record clearly shows that Arna was able to find employment without any significant difficulty.

2. Actually, since Illinois is a deferral state, it would appear that Arna had 300 days in which to file. *See Anderson v. Illinois Tool Works, Inc.,* 753 F.2d 622 (7th Cir.1985). But for purposes of this case, whether the appropriate time frame for filing a charge is 180 days or 300 days is not important to the outcome of the case. His claims in the landscaping department are barred under either time period because his charge was filed more than 300 days after he left that department. His charge with regard to his alleged discriminatory discharge was filed less than 180 days after the discharge.

department, more than 180 days prior to the charge filing date.

The time requirements of 42 U.S.C. § 2000e–5(e) operate like a statute of limitations. The time allowed is relatively short in order to encourage prompt notice to an employer of an alleged violation of Title VII. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 398, 102 S.Ct. 1127, 1135, 71 L.Ed.2d 234 (1982). A plaintiff may, however, recover for discriminatory acts which occurred prior to the 180–day period immediately preceding the date a charge was filed if he can show a "continuing violation," as explained in *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977).

The mere allegation that a plaintiff has experienced discrimination in the past which relates to a present violation is not enough, however, to establish a "continuing violation." The doctrine must still be balanced against the principle which applies to any statute of limitations that a time limit begins to run when a plaintiff knew or should have known that he had a right of action. "Continuing violation" doctrine may not be used "to resurrect claims about discrimination concluded in the past even though its effects persist." *McKenzie v. Sawyer,* 684 F.2d 62, 72 (D.C. Cir.1982). *See also Delaware State College v. Ricks,* 449 U.S. 250, 257, 101 S.Ct. 498, 503–04, 66 L.Ed.2d 431 (1980). Rather, the past acts must be inexorably linked to a violation of the statute which does fall within the filing period. *Evans,* 431 U.S. at 558, 97 S.Ct. at 1889.

Only a few relatively unusual factual situations permit a successful continuing violation claim. *Stewart v. CPC International, Inc.,* 679 F.2d 117, 120–121 (7th Cir.1982). One occurs where the employee continues to face a discriminatory system of promotion or retirement. In such a case discrimination, though occurring in the past, is not concluded and continues in the present because the employer does nothing to correct the system. *Id.* at 121; *Hopkins v. Price Waterhouse,* 618 F.Supp. 1109, 1118–1120 (D.D.C.1985). Another is the

"pattern of ongoing discrimination" approach, where a series of discrete acts allegedly form a "pattern" and the most recent of those acts came within the filing period. *Stewart,* 679 F.2d at 121; *Berry v. Board of Supervisors of Louisiana State University,* 715 F.2d 971, 981 (5th Cir. 1983). Most often a "pattern" case is found when the employer's discrimination has been subtle and covert, so that the employee discovers the discriminatory motive (and so the violation) only after the pattern has emerged. *Berry,* 715 F.2d at 981; *Zewde v. Elgin Community College,* 601 F.Supp. 1237, 1240 (N.D.Ill.1984). Occasionally relief for a pattern is available even when the past acts have not been particularly covert. Such cases, however, are only actionable where the employer continues to have the power to correct for the discrimination and refuses to do so despite repeated complaints from the employee. The employer's failure to act permits an inference of present intent to discriminate. *See Thomas v. E.I. DuPont de Nemours & Co.,* 574 F.2d 1324, 1331 (5th Cir.1978). This type of "pattern" claim also bears a considerable resemblance to a continuing violation claim based on a discriminatory system, and can be seen as the same type of violation on the individual level.

This court does not see how Arna's allegations can be stretched into a claim on a continuing violation theory. He does not allege that Northwestern maintains a discriminatory system of evaluating its employees, nor is there any evidence that it does. We assume, therefore, that he hopes to show a pattern of ongoing discrimination. However, as he describes his experiences in landscaping in his deposition, there is nothing subtle or covert about his treatment. The alleged discriminatory acts in this case, according to his deposition, recurred in a similar manner almost every day of the eight-month period he spent in landscaping. The high degree of frequency of the alleged discriminatory treatment suggests that Arna while still in landscaping should have become aware that Northwestern might have been unlawfully dis-

criminating against him. In fact, Arna, by his own admission, believed that at the time of his transfer into the landscaping department he was being discriminated against. It is significant that he states in his deposition that he had meetings with the EEOC regarding the treatment he was receiving in landscaping. Further, at those meetings it was suggested that charges could be brought. By Arna's own testimony, he knew or should have known while still in landscaping virtually everything he now knows about the possible motive for his treatment. *Cf. Berry,* 715 F.2d at 981; *Zewde,* 601 F.Supp. at 1243. His case cannot fit either the discriminatory system strand or the "covert" pattern strand of continuing violation theory.

More importantly, his claim founders for lack of a present violation. No strand of *continuing violation theory* is viable unless the plaintiff can show a violation in the "present," that is, within the statutory filing period. *Evans,* 431 U.S. at 558, 97 S.Ct. at 1889; *Stewart,* 679 F.2d at 121. The event which Arna presumably considers the last act in the pattern, the act which clearly occurred within the filing period, is his discharge. However, Arna's claim falls in the "disparate treatment" category of Title VII cases, which means that to succeed he must prove that the discrimination was intentional. *See International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335–336 n. 15, 97 S.Ct. 1843, 1854–55, 52 L.Ed.2d 396 (1977); *Regner v. City of Chicago,* 789 F.2d 534, 537 (7th Cir.1986). Arna has no evidence that he was intentionally fired because of his race, and indeed has admitted that he was not discriminated against while in the custodial department.

Arna's allegations come closest to fitting the strand of continuing violation theory which allows relief for an employer's failure to correct for past discrimination despite a present opportunity to do so. A plaintiff may succeed in an employment discrimination action by showing that discrimination was "a determining factor," that "but for" the discrimination the negative decision would not have been made.

*See, e.g., La Montagne v. American Convenience Products, Inc.,* 750 F.2d 1405, 1409 (7th Cir.1984); *Parker v. Federal National Mortgage Ass'n,* 741 F.2d 975 (7th Cir.1984). Arna contends that the negative writeups in his file which followed him from landscaping existed not because of his work performance there but because of the landscaping supervisor's racial bias. He further argues that he would not have been fired but for those negative writeups. An employee with allegedly similar misconduct in custodial was not fired, and Northwestern's director of building services, in the letter he wrote Arna notifying him of impending termination expressly relied in part on Arna's "previous offenses." Thus, Arna concludes, he would not have been fired but for discrimination.

■ The intent requirement of Title VII, however, does not allow for that much distance between the alleged discriminatory attitude and the employment decision. Evidence of bias by one officer of an employer is not evidence that the same bias motivated a decision by a different, higher ranking officer. *La Montagne,* 750 F.2d at 1412. If Arna could reasonably contend that the director of building services knew that Arna's file was tainted by discrimination and relied on it anyway, then perhaps Arna could make out a case for discriminatory intent in the decision to fire him. *Cf. Thomas,* 574 F.2d at 1331 (employer refused to correct evaluations in employee's performance allegedly colored by age discrimination, while apparently relying on them in failing to reinstate him after demotion). But Arna had never filed a discrimination complaint while in landscaping. Indeed, despite all his protests to his superiors about his treatment when in landscaping, not once did he mention in any of those protests that he thought discrimination was at the bottom of that treatment. The decisionmaker thus had no reason to think that racial bias infected the evaluations in Arna's file. Taking accumulated written personnel reports at face value in an employment decision under those circumstanc-

es simply cannot be equated with intentional discrimination.

In short, Northwestern is entitled to summary judgment on all counts of Arna's complaint. No relief is available for the alleged acts of discrimination in the transfer from custodial to landscaping and while Arna was employed in landscaping, since standing alone they are time-barred and they cannot be made part of a pattern of ongoing discrimination. Further, there is no evidence from which a trier of fact could reasonably infer that intentional discrimination was a determining factor in the decision to fire Arna. *Cf. Parker*, 741 F.2d at 980. That means he has no claim for a present violation to which the past acts could be tied, and also no claim for a discriminatory discharge.

### Conclusion

For the foregoing reasons, defendant's motion for summary judgment is granted as to all counts of plaintiff's complaint.