**Valiere ALCENA, Plaintiff,**

v.

**Frederick RAINE, Abdol H. Samiy, the New York Hospital Cornell Medical Center, and Cornell University Medical Center, Defendants.**

88 Civ. 1186 (GLG).

United States District Court, S.D. New York.

Aug. 10, 1988.

Lawrence J. Glynn, White Plains, N.Y., for plaintiff.

Kelley Drye & Warren, New York City (Eugene T. D'Ablemont, Cynthia A. Epstein, of counsel), for defendants Frederick Raine, Abdol H. Samiy, and The New York Hosp. Cornell Medical Center.

Walter J. Relihan, Jr., Thomas Mead Santoro, Ithaca, N.Y., for defendant Cornell University Medical Center.

## OPINION

GOETTEL, District Judge.

Plaintiff, Valiere Alcena, a black, Haitian physician, alleges he was discriminated

against in terms of his employment as a fee-for-service medical consultant, 42 U.S.C. §§ 1983, 2000e *et seq.*, for reasons of race and color. Plaintiff names as defendants the New York Hospital Cornell Medical Center, Cornell University Medical Center, Frederick Raine, administrator of The New York Hospital Cornell Medical Center, Westchester Division, and Abdol Samiy, director of the Division of Medicine at The New York Hospital Cornell Medical Center, Westchester Division.[1] On various grounds, the defendants have moved for dismissal or, in the alternative, for summary judgment. Fed.R.Civ.P. 12(b)(6), 56. Because matters outside the complaint were submitted and considered, we treat defendants' motion as one for summary judgment. For the reasons set forth below, the complaint is dismissed as to both the § 1983 and Title VII claims with leave to replead the Title VII claims.

BACKGROUND

Plaintiff, a black, Haitian physician, was employed in 1978 as a fee-for-service internist in the Division of Medicine of The New York Hospital of Manhattan at its Westchester Division in White Plains. The primary facility of The New York Hospital–Cornell Medical Center, as the affiliation between the New York Hospital and the Cornell University Medical College is known, is located in Manhattan. While he was not employed by Cornell University Medical College, he was a voluntary faculty member with the academic title of "Clinical Instructor of Medicine in Psychiatry (courtesy)." In recognition of the fact Alcena held an academic rank at another medical college, Albert Einstein Medical College, Cornell University Medical College granted him an academic title consistent with protocol in medical colleges only as a courtesy.

The Hospital's Westchester Division is a psychiatric hospital with more than 300 beds, and is one of two locations of the Hospital's Division of Psychiatry. The second one, the Payne Whitney Clinic, is in Manhattan. Because the Westchester Division is not located near the medical facilities and staff of the main Hospital in Manhattan, it was necessary to arrange for non-psychiatric specialists to treat the medical problems of the Westchester Division patients. Prior to 1985, the compensation arrangements with the medical doctors included full-time or part-time salaried appointments, as well as fee-for-service. Plaintiff was assigned to work different weekly schedules, including nights, and was paid for the time he worked on a session basis.

In April 1985, plaintiff was informed by defendant Raine, administrator of New York Hospital, Westchester Division, there was to be a reorganization and the fee-for-service positions, including plaintiff's, were to be eliminated. Effective September 1985, the Division of Medicine at the Westchester Division added one full-time internist staff position and eliminated the regular use of all fee-for-service internists. Accordingly, plaintiff and all other fee-for-service physicians were notified that their services were no longer needed on a regular basis. However, plaintiff was allegedly told by defendant Saimy, director of Division of Medicine at the Westchester facility, that he was not being fired, that he could continue to teach several times per month and he would be paid for it, and that the Hospital would contact him when his services were required. However, plaintiff has never been requested to teach. Cmplnt ¶¶ 49, 50.

On July 19, 1985, plaintiff filed a verified complaint with the New York State Division of Human Rights (NYSDHR) and the Equal Employment Opportunity Commis-

---

**1.** There is no such legal entity as The New York Hospital Cornell Medical Center. The New York Hospital and the Cornell University Medical College are independent, non-profit institutions but are affiliated in that the hospital serves as the principal teaching hospital for the Medical College. All employees associated with the entity known as New York Hospital Cornell Medical Center are either employees of Cornell University Medical College or The Society of New York Hospital. Most physician faculty members who are employees of Cornell University Medical Center also have staff appointments with New York Hospital, but are not employees of New York Hospital. In some cases, including plaintiff Alcena, physicians are employees of New York Hospital but not of Cornell University.

sion (EEOC) alleging employment discrimination based on race, color and national origin. The EEOC deferred to NYSDHR for the initial investigation. At the time he filed the agency complaint, plaintiff Alcena alleges he was the "only Black in (his) position at the respondent medical center." Epstein Aff., Exh. A. The complaint, which named "Cornell University Medical Center" as the only respondent, contained allegations of discrimination in that 1) plaintiff requested but was denied a promotion to Assistant Professor of Medicine while Caucasian residents who were students of plaintiff eventually were given the status of Assistant Professor of Medicine; 2) a condition of plaintiff's continued employment was regularly scheduled night-shifts without any additional compensation, although one Caucasian doctor was allowed to relinquish his night duties and work days only and two Caucasian physicians were hired and not required to work at night; and, 3) his termination was due to reasons of race and retaliation for having alerted the Hospital to the possibility defendant Samiy fraudulently claimed to be board certified.

On the same day plaintiff filed his administrative complaint, he submitted a letter to NYSDHR requesting two forms of relief in addition to that requested in the complaint; a second request for additional relief was made by letter dated July 31, 1985; and, in a third letter, dated August 23, 1985, plaintiff expressed concern over the alleged failure to reappoint him to the medical staff and maintained it was an additional ground for relief.

Cornell University Medical College responded on September 16, 1985, to the allegations in plaintiff's administrative complaint, and included fourteen documents as exhibits. Further, the Medical College challenged plaintiff's assertion that it was his employer. Subsequently, plaintiff submitted a rebuttal consisting of a letter and six exhibits. Later, plaintiff submitted salary records which had "The New York Hospital–Cornell Medical Center, Westchester Division" imprinted at the top. Approximately 3 weeks later, NYSDHR issued an Order Amending Complaint that added "The New York Hospital–Cornell Medical Center, Westchester Division" as a respondent. The EEOC charge, however, was never amended.

On February 13, 1986, the NYSDHR held a four hour fact-finding meeting, attended by plaintiff, counsel for plaintiff and respondents, and six witnesses including defendants Samiy and Raine. The Medical College was asked to submit numerous additional documents, and a month later 29 additional pages of explanatory materials and documents were submitted. On August 25, 1986, New York Hospital, Westchester Division, submitted its position statement to the NYSDHR in response to allegations made by plaintiff both in his administrative complaint and at the fact-finding meeting. Subsequently, plaintiff submitted a letter in response to the material submitted by New York Hospital. On December 18, 1987, the NYSDHR concluded its investigation and dismissed the administrative complaint in its entirety, no probable cause having been found. Specifically, insofar as respondents "The New York Hospital Cornell Medical Center, Westchester Division (respondent) and Cornell University Medical Center (sic) (as Necessary [sic] party)" are concerned, "[t]he investigation failed to reveal sufficient facts to credit the allegations contained in the complaint that the complainant was unlawfully discriminated against...." Epstein Aff., Exh. N.

[T]he complainant was not considered for promotion because the respondent's academic administrative regulations do not permit appointments to persons who hold primary appointments at other medical colleges. It should be noted that respondents indicated that they have not promoted a part-time consultant associated with the Department of Medicine in at least five years.... The record also failed to support the complainant's contention that he was compensated at a lower salary rate than his Caucasian co-workers. It should be noted that the complainant's position was not the only one eliminated. Other Caucasian co-workers, similarly situated, were also ad-

vised that their positions were eliminated.

Epstein Aff., Exh. N.

On February 19, 1988,[2] plaintiff filed the instant judicial complaint in which he alleges employment discrimination based on race and color, 42 U.S.C. §§ 2000e *et seq.*, 42 U.S.C. § 1983. Plaintiff asserts 6 "causes of action" and maintains the defendants conspired to deprive him of his constitutional right to employment without racial discrimination. Plaintiff seeks damages, declaratory relief, and attorney's fees against defendants for "their illegal actions, practice, and policies, maintained and conceived in bad faith", Cmplnt. Wherefore ¶ 2. Specifically,

1. Plaintiff alleges he was discriminated against in that in 1980 he was asked by defendant Samiy to submit two letters of recommendation regarding his qualifications to continue in his employment, but none of the other physicians in the Department of Medicine were required to produce similar letters;

2. Plaintiff alleges he was discriminated against in that beginning in 1980, he was told by defendant Samiy continuance of his employment was dependent upon his coverage of night duty without any additional compensation but, subsequently, two Caucasian doctors were hired in 1982 to work nights only and at additional compensation.

3. Plaintiff complains that beginning in 1981 and continuing through 1982 and 1983, he sought to obtain privileges at the Department of Medicine at "Cornell Medical Center in the 'Downtown Division', as distinguished from the 'Westchester Division,'" Cmplnt. ¶ 26. It was not until 1984 that he was notified in writing, but without an explanation of why it had taken three years to notify him, that his request was denied because staffing was closed.

4. Plaintiff complains that in 1981, 1982 and 1983, through defendant Samiy, he verbally submitted his name for consideration for a promotion and received a written denial.[3] In 1984, he learned there was an application form which needed to be completed and submitted as a prerequisite for consideration for a promotion. He completed it, and per defendant Samiy's demand, gave it to him for submission. Plaintiff later learned it was never forwarded.

5. Plaintiff complains that in 1982, in reliance on defendant Saimy's statement that his promotion opportunities would be enhanced if he would give up his Clinical Instructorship at Albert Einstein Medical College, he arranged for a transfer of status to adjunct instructor but was still refused a promotion.

6. Plaintiff complains that he was not invited to regular monthly meetings of the professional staff members of the Department of Medicine because in April 1984 he spoke at a similar meeting of instances of serious medical incompetence he claimed to have witnessed; and, his former relationship with the New York Hospital was changed in that the fee-for-service arrangement was terminated. He was told he would continue to teach on an at-call basis for compensation, but was never called to teach.

DISCUSSION

The case is before the court on the defendants' motion to dismiss for failure to state a cause of action or, in the alternative, for summary judgment. Fed.R.Civ.P. 12(b)(6), 56. As to the § 1983 claims, the defendants argue they are dismissable as a matter of law on four separate grounds: 1) the defendants are private parties and the requisite state action is missing; 2) the plaintiff is collaterally estopped from asserting the § 1983 claims he fully pursued as an agency claim; 3) the § 1983 claims arose more than three years prior to the commencement of this action and are, therefore, time barred;[4] 4) the § 1983 and

---

**2.** EEOC sent plaintiff a Notice of Right to Sue on April 28, 1988, after the instant action was instituted, in which only Cornell University Medical Center was named.

**3.** We understand this promotion to be as an adjunct, or nonsalaried, faculty member with no monetary consequences at all.

**4.** The court notes the statute of limitations period for § 1983 claims is 3 years, that is, the

Title VII claims are based on the same facts, and Title VII is the exclusive remedy. As to the Title VII claims, the defendants argue they are dismissable as a matter of law because 1) no charge was filed with the EEOC against defendants Raine, Samiy, and The New York Hospital Cornell Medical Center 2) the plaintiff did not receive a Notice of Right to Sue with respect to defendants Raine, Samiy, and The New York Hospital Cornell Medical Center from the EEOC; and, 3) because the Title VII claims arose more than 300 days before plaintiff filed his administrative charge and are time barred.

The plaintiff responds that under *University of Tennessee v. Elliott*, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), the same preclusive effect to which it would be entitled in the state courts is to be given to the findings of a state agency with respect to § 1983 claims only if the agency was acting in a judicial capacity. Plaintiff argues the agency proceedings were not similar enough to judicial proceedings to support collateral estoppel as to the § 1983 claims. Further, Title VII claims are not given preclusive effect by a federal court if the administrative findings are unreviewed.

Plaintiff contends the test of whether or not the defendants were state actors is a flexible one and requires an inquiry into several factors, *Jackson v. Statler Foundation*, 496 F.2d 623, 629 (2d Cir.1973). Plaintiff refers to the fact the defendants are regulated by the state and receive public funds, the reduction of which purportedly led to the elimination of the fee-for-service positions, and argues for discovery regarding all the activities of the institutional defendants before the court decides the motion to dismiss for failure to establish state action.

Plaintiff maintains the actions complained of constitute a continuous course of discriminatory conduct which began in 1980 and continued until after he filed the agency complaint/charge. Thus, they are timely.

Plaintiff contends all parties had actual notice of the complaint/charge filed with the NYSDHR and the EEOC and, therefore, the fact they were not named on the EEOC charge nor on the Notice of Right to Sue letter is not an insurmountable obstacle as the "pleadings" can be amended.

*Section 1983 Claims*

A. State Action.

In order to state a cause of action under § 1983, the plaintiff must allege he has been deprived of a federal right by one acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980). Plaintiff Alcena alleges the defendants acted under color state law when they deprived him of his constitutional right to employment absent racial discrimination. 42 U.S.C. § 1983. Concededly, the defendants are private parties and, therefore, the "question is whether [their] conduct has sufficiently received the imprimatur of the state so as to make it 'state' action for purposes of the Fourteenth Amendment." *Blum v. Yaretsky*, 457 U.S. 991, 1003, 102 S.Ct. 2777, 2785, 73 L.Ed.2d 574 (1982); *see also Rendell-Baker v. Kohn*, 457 U.S. 830, 838, 102 S.Ct. 2764, 2769, 73 L.Ed.2d 418 (1982) (requirement of color of state law under § 1983 is largely coextensive with requirement of state action under fourteenth amendment).

 Plaintiff's reliance on the fact the institutional defendants are regulated by the state and receive substantial public funding is, without more, woefully insufficient to impute state action to the conduct of the defendants. " '[T]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment.' " *Blum*, 457 U.S. at 1004, 102 S.Ct. at 2786 quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974). The Supreme Court identified 3 factors to be considered in determining

plaintiff has three years from the time the action accrued until the filing of the judicial complaint, February 19, 1988, *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985);

*Okure v. Owens*, 816 F.2d 45 (2d Cir.1987); N.Y. Civ.Prac.Law § 214(5); for Title VII claims, it is 300 days prior to the filing of the administrative charge, July 19, 1985. 42 U.S.C. § 2000e-5(e).

whether particular conduct constitutes "state action." *See generally Blum,* 457 U.S. at 1004–1005, 102 S.Ct. at 2785–2786. First, there must be a sufficiently close nexus between the state and the challenged action of the regulated entity such that those actions may be fairly treated as those of the state; the inquiry is whether the state is responsible for the specific conduct of which the plaintiff complains. Secondly, a state may be held responsible for private conduct only when it has exercised coercive power or has provided such significant encouragement that the action must in law be deemed to be that of the state. And finally, the required nexus may be present if the private entity has exercised powers that are traditionally the exclusive prerogative of the state.

■ The actions plaintiff complains about are employment actions taken by his employer, a private hospital. Not a scintilla of evidence was submitted to even suggest the state had any involvement in the contractual relationship of the hospital employer and fee-for-service medical employee or volunteer faculty employee. No allegations were made the state coerced or encouraged any regulatory scheme pertaining to employment practices in such a setting, nor that employment relationships in a hospital setting traditionally have been the exclusive prerogatives of the state.

■ Receipt of state funds is also insufficient to transform these private actions into state actions. *See Rendell–Baker v. Kohn,* 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) (where private school regulated by city, state, and federal agencies, and received funds from them, does not act under color of state law). Here, the relationship of employer and employee/volunteer is not changed because defendants may receive state funds, *Rendell–Baker,* 457 U.S. at 841, 102 S.Ct. at 2771 citing *Polk County v. Dodson,* 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981). The fact of funding does not make the personnel decisions of the institution acts of the state. *Beverly v. Douglas,* 591 F.Supp. 1321, 1329 (S.D.N.Y.1984) (where plaintiff did not allege state played any part in employment decisions by Cornell University Medical College or the Society of New York Hospital she could not recover on her § 1983 claims).

There is no basis to impute the actions of the private defendants to the state as there is no evidence the state has intruded into or was even interested in the challenged personnel decisions. *Beverly,* 591 F.Supp. at 1330 (summary judgment granted where plaintiff failed to come forward with anything to show there was a nexus between the challenged actions and the state's involvement with defendant New York Hospital).

Accordingly, plaintiff's § 1983 claims fail because he cannot make out the necessary element of state action and, consequently, defendants' motion for summary judgment is granted and the complaint is dismissed as to the § 1983 claims. Ordinarily, "[i]f the action of the (defendants) is not state action, our inquiry ends." *Rendell–Baker,* 457 U.S. at 838, 102 S.Ct. at 2770. However, because we must address the issue of collateral estoppel with respect to plaintiff's Title VII claims, we will also address the issue with respect to the § 1983 claims.

B. Collateral Estoppel.

■ Under appropriate circumstances, § 1983 claims which have been administratively adjudicated, may be given preclusive effect and denied a *de novo* review in federal court. *University of Tennessee v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), established that federal courts must give a state agency's findings of fact the same preclusive effect to which it would be entitled in the state courts, provided the state agency acted in a judicial capacity to resolve disputed issues of fact properly before it which the parties had an adequate opportunity to litigate. The effect to be given administrative findings by New York courts is set forth in *Ryan v. New York Telephone Co.,* 62 N.Y. 2d 494, 478 N.Y.S.2d 823, 467 N.E.2d 487 (1984). The issue must be identical in the administrative and judicial proceedings, material and necessary to the first administrative proceeding, and it must be necessar-

ily determined in the second action. There must have been a full and fair opportunity afforded the litigants to contest the issue in the first action.[5] To succeed, the proponent of collateral estoppel has the burden to demonstrate that the issues are identical, while the opponent has the burden to establish the absence of a full and fair opportunity to litigate the issue in the prior proceeding.

The parties do not dispute the factual circumstances of the prior proceeding. But, plaintiff argues he was not afforded a full and fair opportunity because discovery was not a part of the proceedings. Plaintiff does not cite any authority for the proposition collateral estoppel is to be denied if discovery was not a part of the prior proceedings, and he ignores the extensive nature of the previous administrative proceeding.

The result of the agency investigation was a finding of no probable cause with respect to the charges in the administrative complaint, the charges which are the very allegations averred in the judicial complaint. The "realities of the prior litigation", *Ryan*, 478 N.Y.2d at 827, 467 N.E.2d 487, are that the stakes were not trivial as they concerned plaintiff's livelihood and professional status, *see Staatsburg Water Co. v. Staatsburg Fire District*, 72 N.Y.2d 147, 531 N.Y.S.2d 876, 527 N.E.2d 754 (1988), and, consequently, he had every incentive to fully and actively participate in the administrative proceedings. Plaintiff Alcena "explicitly solicit[ed] resolution of an issue from [the] agency, [and] fully participate[d] in the administrative proceeding which follow[ed] with the expectation that all will be bound by the result reached there...." *Allied Chemical v. Niagara Mohawk Power Corp.*, 72 N.Y.2d 271, 532 N.Y.S.2d 230, 528 N.E.2d 153 (1988). We note in this regard that from the very day the administrative proceeding was com-menced, the plaintiff was particularly interested in the relief fashioned by the agency. On several occasions, he requested additional forms of relief. Surely, this was done with the expectation that he would be bound by the result, whether or not it was to his liking. In pursuing that relief, the plaintiff submitted numerous documents and exhibits, was provided the opportunity to make submissions in rebuttal to the voluminous documents and exhibits submitted by the defendants, and was afforded an opportunity to confront and cross-examine witnesses, including the defendants. Accordingly, the court is persuaded "the facts asserted were adequately tested, and that the issue was fully aired". *Id.* In addition, "[t]he (NYSDHR) does not make a probable cause determination until the complainant has had 'full opportunity to present on the record, though informally, his charges against his employer or other respondent, including the right to submit all exhibits which he wishes to present and testimony of witnesses in addition to his own testimony.'" *DeCintio v. Westchester County Medical Center*, 821 F.2d 111, 117 (2d Cir.1987) quoting *State Division of Human Rights v. New York State Drug Abuse Control Commission*, 59 A.D.2d 332, 399 N.Y.S.2d 541, 544 (4th Dept.1977).

Plaintiff's allegations of discriminatory termination, denial of promotion, and discriminatory work conditions and compensation were fully considered during the administrative hearing. They are the same issues he brings to federal court. It is clear that under New York law plaintiff would be precluded from relitigating the same issues of employment discrimination brought before the NYSDHR where he had a full and fair opportunity to litigate them. *DeCintio*, 821 F.2d at 118. Accordingly, collateral estoppel is a bar to plaintiff's

---

**5.** In determining whether there was a full and fair opportunity, "[a]mong the specific factors to be considered are the nature of the claim in the prior litigation, the incentive and initiative to litigate and the actual extent of litigation, the competence and expertise of counsel, the availability of new evidence, the differences in the applicable law and the foreseeability of future litigation." (Citations omitted.) *Ryan*, 478 N.Y. S.2d at 827, 467 N.E.2d 487. Additionally, the realities of the prior litigation, the context and other circumstances which may discourage a party from fully litigating the determination now asserted against him are to be considered. *Id.*

§ 1983 claims and the complaint is dismissed as to them.

*Title VII Claims*

### C. Failure to Name Defendants as Respondents in EEOC Charge.

The defendants contend that because only the Cornell University Medical Center was named as a respondent on the agency charge, the plaintiff cannot bring Title VII claims against the three other defendants named in the judicial complaint. 42 U.S.C. § 2000e–5(f)(1). Further, the defendants argue defendants Raine, Samiy, and The New York Hospital Cornell Medical Center, are not properly before this court because a Notice of Right to Sue letter is a jurisdictional prerequisite to a judicial adjudication of the merits of the plaintiff's Title VII claims. *Sheehan v. Purolator Courier Corp.*, 676 F.2d 877, 881 (2d Cir.1982).

■ The general rule is that unless the party has been named a respondent in the EEOC charge, he cannot be a defendant in a Title VII action. The reason for this is to provide notice to the party of the alleged violation and to bring him before the EEOC in order to pursue voluntary compliance with the law without having to burden the federal courts. Exceptions to the general rule may be granted when failure to comply does not contravene the purpose of the requirement. In such circumstances, courts have not required the dismissal of defendants even though they were not named in the EEOC charge, and a Right to Sue Letter was not issued as to them. *See Koster v. Chase Manhattan Bank*, 554 F.Supp. 285 (S.D.N.Y.1983). While sensitive to the purposes of the requirement of 42 U.S.C. § 2000e–5(f)(1), courts are also aware of the need to avail plaintiffs of "complete redress of legitimate grievances without undue encumbrance by procedural requirements especially when demanding full and technical compliance would have no relation to the purposes" underlying those requirements. *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir.1977).

■ In the present case, defendant New York Hospital Cornell Medical Center, while not named in the original agency charge filed with NYSDHR and EEOC, was later added as a respondent in the NYSDHR complaint. Consequently, the Westchester Division of New York Hospital was fully aware of the administrative proceedings, was represented by counsel at the fact finding conference, its administrator (defendant Raine) and the director of the Division of Medicine (defendant Samiy) also attended the fact finding meeting, and after the fact finding conference counsel for New York Hospital submitted a "position statement" to the NYSDHR, Epstein Aff., Exh. K. These defendants cannot claim lack of notice of the administrative complaint as they participated in the investigatory proceedings. Presumably, they were a party to any conciliatory activities as well because their actions formed the basis of the charges filed with the NYSDHR and EEOC. *See Koster*, 554 F.Supp. at 289. Thus, it does not undermine the statutory goal of conciliation without resort to the federal courts to allow plaintiff to name as defendants Raine, Samiy and New York Hospital Cornell Medical Center, nor can they claim prejudice from lack of knowledge of the administrative complaint and investigation. Therefore, the court concludes defendants Raine, Samiy, and New York Hospital Cornell Medical Center are appropriately named as defendants in this case.

### D. Collateral Estoppel

■ Title VII claims are not given preclusive effect if unreviewed by a state court and are entitled to a *de novo* review in federal court. *University of Tennessee v. Elliott*, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986). Accordingly, plaintiff's Title VII claims cannot be dismissed for reasons of collateral estoppel.

### E. Statute of Limitations.

■ The limitations period for a Title VII claim is 300 days prior to the filing of the administrative complaint. 42 U.S.C. § 2000e–5(e). However, if a plaintiff can demonstrate the challenged action is part of a continuing violation, the plaintiff will not be held to the strict time requirements

of Title VII, although damages of back pay are restricted to two years prior to the filing of an administrative charge. 42 U.S. C. § 2000e–5(g). The stringent time limits of Title VII, however, may not be circumvented by merely characterizing an act of discrimination as a "continuing violation". *Delaware State College v. Ricks*, 449 U.S. 250, 257, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980). To demonstrate a continuing violation a plaintiff must show " 'a series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the [limitations] period.' " *Valentino v. United States Postal Service*, 674 F.2d 56, 65 (D.C.Cir.1982) quoting B. Schlei & P. Grossman, *Employment Discrimination Law* 232 (2d ed. 1979). *See also United Air Lines v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977) (to constitute a continuing violation, complainant must allege a present and ongoing violation of Title VII, in addition to those acts outside the limitations period).

Plaintiff argues his Title VII claims are timely because they are a "lengthy and consistent pattern of conduct, exemplified by specific examples, which taken as a whole, constitute a continuing violation. ... No single act alleged by Plaintiff had its effect at that particular time without a continuing effect on his employment. ... the facts speak for themselves and as a whole, constitute a continuing course of action." Plntf's Mem. of Law at 11.

 Initially, to make out a continuing violation, the plaintiff must prove a discriminatory act occurred within the 300 day limitation period. *See Koster v. Chase Manhattan Bank*, 687 F.Supp. 848, 859 (S.D.N.Y.1988). If no impermissible action was taken during the limitations period, the plaintiff cannot prevail. Assuming the plaintiff does demonstrate a timely present violation, in order for it to be transformed into a violation continuing in nature, "the discrimination may not be 'limited to isolated incidents but [must] pervade[ ] a series or pattern of events which continue to within' the filing period." *Milton v. Weinberger*, 645 F.2d 1070, 1076 (D.C.Cir.1981)

quoting *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 473 (D.C.Cir.1976). A conclusory allegation of a continuing violation is insufficient. The plaintiff must plead a continuous policy of discrimination, an unlawful program of discrimination, or an alleged discriminatory pattern. *Alveari v. American International Group, Inc.*, 590 F.Supp. 228, 231 (S.D.N.Y.1984) (citations omitted).

 In the instant complaint, of the incidents for which a date is clearly stated, most occurred outside the 300 day limitations period. Further, the complaint does not properly allege a continuing violation. *See Arna v. Northwestern University*, 640 F.Supp. 923 (N.D.Ill.1986) (mere allegation that plaintiff has experienced discrimination in the past which relates to a present violation is not enough to establish a continuing violation). The continuing violation doctrine cannot be used to resurrect claims of past discrimination. Rather, "the past acts must be inexorably linked to a violation of the statute which does fall within the filing period." *Id.* at 926.

We note, as we did at oral argument, that the court is unable to ascertain the dates of some of the actions alleged in the complaint. Thus, while we find a pattern of discrimination has not been properly alleged in the complaint, we are unable to determine which of the causes of action may be a present violation because not all of the relevant dates have been set forth. Accordingly, the complaint is dismissed as to the Title VII claims with leave to replead.

The court is compelled to add a note of caution, however. Based on the evidence submitted in support of the instant motion and the representations made at oral argument, 1) it seems dubious the plaintiff will succeed on the termination claim in light of the fact *all* similarly situated fee-for-service employees were terminated; 2) even if the plaintiff prevails on the failure to promote claim, it is questionable whether there are any damages available under Title VII for a volunteer, nonpaying position; and, 3) the unequal conditions and compensation claims depend on showing a present viola-

tion for which recovery is limited to 2 years prior to the filing of the administrative complaint. Based on the submissions thus far, the likelihood of establishing a continuing violation seems remote.

In conclusion, the complaint is dismissed as to both the § 1983 and Title VII claims, with leave to replead the Title VII claims.

SO ORDERED.